■ WILLIAM M. NEWMAN, an Infant, by His Parent and Natural Guardian, ARNOLD NEWMAN, et al., Plaintiffs, v ISRAEL KETANI, Doing Business as CAMP KADIMA, et al., Defendants. DANIEL HILSENRATH, Defendant and Third-Party Plaintiff-Respondent-Appellant; ALLSTATE INSURANCE COMPANY, Third-Party Defendant-Appellant-Respondent.—In a negligence action to recover damages for personal injuries, etc., in which defendant Daniel Hilsenrath commenced a third-party action against an insurer to require it to contribute to and participate in the satisfaction of any recovery which plaintiffs might obtain to the limits of a certain policy of insurance, (1) the third-party defendant, Allstate Insurance Company, appeals from so much of an order of the Supreme Court, Queens County, entered December 9, 1975, as denied its motion for summary judgment dismissing the third-party complaint and (2) the third-party plaintiff, Daniel Hilsenrath, cross-appeals from so much of the said order as failed to grant him summary judgment pursuant to CPLR 3212 (subd [b]). Order affirmed insofar as appealed from, without costs or disbursements. On July 5, 1959, the infant plaintiff, William Mark Newman, a camper at Camp Kadima, sustained personal injuries when an automobile in which he was a passenger, which was being operated by defendant Daniel Hilsenrath, left the roadway and struck a tree. The automobile was owned by defendant Ketani. At the time of the accident Daniel Hilsenrath was a counselor employed by the camp. He was driving the car pursuant to his employment, with the permission and consent of the camp. Erich Hilsenrath, Daniel's father, promptly notified his insurer, defendant Allstate Insurance Company, about his son's accident. The main action was instituted in November, 1970. Named as defendants in the action were Israel Ketani, doing business as Camp Kadima, Israel Ketani, individually, and Daniel Hilsenrath, by his father and natural guardian. More than four years later, as the action was proceeding to trial, Erich Hilsenrath received a letter from Allstate, dated

April 11, 1975, which reserved its rights under the policy and disclaimed coverage for the accident. Allstate bases its disclaimer of coverage upon an exclusion in the policy, which provides that: "This Part 1 does not apply to: * * * 3. a non-owned automobile while used * * * (b) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur, or domestic servant, or a trailer used therewith". The exclusion relied upon by Allstate applies to the facts herein. Daniel, a "relative" of the insured, as that word is defined in the policy, was within the persons included by the language "in any other business or occupation of the insured". However, he argues that, in any event, as a result of the long delay, Allstate should be estopped from disclaiming coverage. Third-party plaintiff's father notified Allstate of the accident promptly. Allstate had a considerable amount of time in which to investigate the claim and to establish the facts. From the time the main action was commenced, Allstate represented, in letters to the owner's insurer, that it represented Erich Hilsenrath as an excess insurer. It established a file and presumably was aware that Daniel had been operating the vehicle pursuant to his employment as a camp counselor. It must be assumed that Allstate was aware of its own policy's exclusionary provisions. It was only in April, 1975, four and one-half years after the main action was commenced, and only as the case was proceeding to trial, that Allstate first notified Erich Hilsenrath of the exclusion in the policy. There are New York cases which recognize that an insurer may be estopped from asserting noncoverage under a policy of insurance issued by it (see, e.g., *Government Employees Ins. Co. v Giugno,* 61 Misc 2d 1092 [citing *O'Dowd v American Sur. Co.,* 3 NY2d 347; *Schultz & Co. v Camden Fire Ins. Assn.,* 304 NY 143; *Moore Constr. Co. v United States Fid. & Guar. Co.,* 293 NY 119; *Gerka v Fidelity & Cas. Co. of N. Y.,* 251 NY 51; Ann., 1 ALR3d 1139; Ann., 38 ALR2d 1148]). In *Giugno* the court, which refused to invoke common-law estoppel as a matter of law in denying summary judgment, preserved the possibility that such an estoppel could be found. Similarly, an insurer can waive an exclusionary provision and thereby impose the obligations of the policy upon itself *(Rosado v Eveready Ins. Co.,* 34 NY2d 43). Subdivision 8 of section 167 of the Insurance Law, as it read at the times in question, provided "If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured, and the injured person or any other claimant." The statute provides for prompt notice by an insurer when it disclaims liability or denies coverage. Here the denial of coverage is based upon an exclusion under the policy. This is not a situation where the denial of coverage has come about because the policy itself is no longer in effect (cf. *State Farm Mut. Auto Ins. Co. v Elgot,* 48 AD2d 362). In *Allstate Ins. Co. v Gross* (27 NY2d 263), the court stated (pp 269–270): "The statute provides a flexible time limit on disclaimer of liability or denial of coverage, but a time limit nevertheless. The limit depends merely on the passage of time rather than on the insurer's manifested intention to release a right as in waiver, or on prejudice to the insured as in estoppel (see *Cohen v. Atlantic Nat. Ins. Co.,* 24 A D 2d 896, *supra).* Otherwise there would have been little purpose for the statute, if it were only an inadequately drafted codification of the pre-existing decisional rules, inadequate because the preconditions to the defenses would not have been spelled out. * * * Whether the absolute rule was enacted because of a presumption of preju-

dice from any undue delay or for some other reason is of no moment. The statute lays down an unconditional rule. It requires, however, as a foundation, unreasonableness as a standard for delay, which means simply that no particular time is deemed undue delay. *Rather the question of unreasonableness becomes a question of fact,* or if extreme, of law, depending *upon the circumstances of the case which make it reasonable for the insurer to take more or less time to make, complete, and act diligently on its investigation of its coverage* or breach of conditions in its policy" (emphasis supplied). (See, also, *Kasson & Keller v Centennial Ins. Co.,* 79 Misc 2d 450.) We hold that the length of the delay presents a question as to the timeliness of Allstate's denial of coverage. Although not noted by the parties, subdivision 8 of section 167 of the Insurance Law applies to an "accident occurring within this state". We believe that, on these facts, the accident bears such a substantial relation to this State that the statute should apply (see *Matter of Askey [General Acc. Fire & Life Assur. Corp.],* 30 AD2d 632, affd 24 NY2d 937; *Kasson & Keller v Centennial Ins. Co., supra).* Hopkins, Acting P. J., Martuscello, Margett, Rabin and Hawkins, JJ., concur.