OPINION OF THE COURT
Vincent G. Bradley, J.
The plaintiff moves pursuant to CPLR 3212 for summary judgment on the first cause of action contained in its first amended complaint. The cause of action in question seeks, inter alia, a declaratory judgment holding the defendant Lincoln Insurance Company (Lincoln) responsible to indemnify the plaintiff for any clean-up cost incurred in connection with an oil spill which initially occurred on the plaintiff’s premises. Plaintiff also seeks a declaration obligating Lincoln to pay any fines levied as a result of the oil spill and to defend all litigation commenced or to be commenced against the plaintiff in connection with the same. The codefendant Rhulen Agency, Inc. (Rhulen) cross-moves pursuant to CPLR 3211 (subd [b]) dismissing the second and seventh affirmative defenses contained in defendant Lincoln’s answer. Said defendant also moves pur *890 suant to CPLR 3212 for summary judgment against codefendant Lincoln on its first, second and third cross claims contained in its answer.
The motion and the cross motions were submitted on stipulated facts. On January 25, 1981 an oil spill occurred on the plaintiff’s premises as a result of a ruptured nipple located on an oil storage tank. At that time a comprehensive general liability insurance policy issued by Lincoln was in effect. The plaintiff initially inquired of Rhulen whether or not it was covered for loss of the oil under another insurance policy not at issue here. Thereafter on April 27, 1981 an engineer from New York State Department of Environmental Conservation (DEC) discovered fuel oil in a swamp located near the plaintiff’s premises but not owned by it. The DEC advised the plaintiff that the area in question constituted a State declared fresh water wetland and pursuant to article 12 of the Navigation Law, the plaintiff was strictly liable to clean up the oil spill and subject to fines of up to $25,000 per day depending upon the plaintiff’s co-operation in cleaning up the spill. The plaintiff immediately notified Rhulen that oil had been found in the swamp and Rhulen in turn notified Lincoln about the problem by telephone on April 27,1981, and then by letter dated April 30,1981. On April 30,1981 plaintiff contracted with the New England Pollution Control Company (NEPCO) to clean up the oil spill. On June 8, 1981, Lincoln’s adjusters notified the plaintiff that it would conduct an .investigation of its claim but reserved all rights concerning timeliness of the notice of the claim. The plaintiff objected to this reservation of rights by way of its attorney’s letter dated June 11, 1981. Further the plaintiff notified NEPCO that'it would no longer be working for the plaintiff as of June 12, 1981. Thereafter, however, the State retained. NEPCO itself and indicated that it would charge the plaintiff for the cost of the cleanup. On September 4,1981 defendant Lincoln notified the plaintiff’s attorney by letter that it was denying plaintiff’s claim on the ground that the cost of cleanup of the oil spill was not part of property damage and therefore not an item entitled to insurance coverage. The supplemental summons and amended complaint against Lincoln and Rhulen were *891 served on or about November 16, 1981, and issue was joined by all parties by January 4, 1982. Thereafter, the State of New York commenced an action by serving a summons with notice seeking $289,945.44 in clean-up costs plus statutory penalties. NEPCO claims that it is owed $62,829.59 for the clean-up services performed for the plaintiff through June 12, 1981. For purposes of this motion, the defendant Lincoln stipulates that the oil spill was an “occurrence” within the meaning of the policy and that it withdraws all its affirmative defenses other than the second and seventh defenses set forth in its answer.
The court will first address the question of whether or not the cost of the cleanup of the oil spill constitutes “property damage” within the meaning of the insurance policy with the plaintiff. The relevant property damage liability portion of the comprehensive general liability insurance policy issued to the plaintiff by defendant Lincoln provides: “The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages because of Y. bodily injury or Z. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.” In order to more fully understand the terms of the policy a recitation of some definitions is also necessary. The insurance policy in question defines an “occurrence” as: “ ‘occurrence’ means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured”. Further, said insurance policy defines “property damage” as meaning: “property damage *892 means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period”. In the stipulated facts the defendant Lincoln has conceded that the oil spill incident in question was an “occurrence” as defined in the policy. It appears to this court that this concession alone constitutes an admission that the oil spill did result in “property damage”. However, if the court gives the benefit of doubt to defendant Lincoln that it did not intend to concede that the oil spill was property damage in admitting that the incident was an occurrence, the court still finds that the oil spill does constitute “property damage” as defined in the insurance policy herein.
The court agrees with the plaintiff’s assertions that the New Jersey Superior Court case of Lansco, Inc. v Department of Environmental Protection (138 NJ Super 275) should control in this matter. That case recognized the principle that “the sovereign’s interest in the preservation of public resources and environment enables it to maintain an action to prevent injury thereto”. (Lansco, Inc. v Department of Environmental Protection, supra, p 282.) The applicable statute herein is article 12 of the Navigation Law (§§ 170-197). The legislative intent set forth in section 170 of the Navigation Law clearly indicates the State Legislature’s thinking with respect to this matter. It notes the delicately balanced resources of land and water in this State and the importance of their preservation. The Legislature also found that “the discharge of petroleum within or outside the jurisdiction of this state constitutes a threat to the economy and environment of this state” (Navigation Law, § 170). Further, that section states that the Legislature clearly intended to “provide liability for damage siistained within this state as a result of the discharge of said petroleum by requiring prompt cleanup and removal of such pollution and petroleum”. There is no doubt that this section of law prohibits anyone from discharging petroleum into State waters or onto lands from which it might flow or drain into those waters regardless of fault (Evans v Aetna Cas. & Sur. Co., 107 Misc 2d 710, 712).
*893 In view of the above, the court agrees with the plaintiff that Lincoln’s assertions that plaintiff has not shown that the petroleum discharged resulted in injury to tangible property is preposterous. Further, Lincoln urges that Lansco (supra) should not be controlling as it is a case from a different jurisdiction. The court disagrees as the insurance policy terms in question are nearly identical in this case and the Governor’s memorandum of approval enacting article 12 as part of the Navigation Law notes that this legislation is similar to that enacted in New Jersey (McKinney’s Session Laws of NY, 1977, p 2530). Contrary to the defendant Lincoln’s assertions, the court does not find that imposing the cost of cleanup by statute is punitive in nature but is clearly reflective of the State’s power to establish damages with respect to legislation designed to preserve the sovereign State’s interest in the preservation of public resources (Lansco, Inc. v Department of Environmental Protection, supra).
Additionally, the court is also of the opinion that as a matter of law the denial of coverage was not made as reasonably soon as possible pursuant to subdivision 8 of section 167 of the Insurance Law, thus precluding Lincoln from any effective disclaimer or denial (Hartford Ins. Co. v County of Nassau, 46 NY2d 1028, 1029-1030). It is not denied that Lincoln’s adjusters completed their investigation by June 15, 1981, yet Lincoln did not deny coverage until September 4, 1981. This unexplained delay of nearly three months clearly falls within the Court of Appeals finding in Hartford (supra).
Given the above, Lincoln’s second affirmative defense in its answer should be dismissed. Thus the court hereby finds that defendant Lincoln is obligated to indemnify plaintiff for all clean-up costs incurred by plaintiff and also incurred by the State in connection with the oil spill. Further defendant Lincoln is obligated to defend all litigation commenced or to be commenced against the plaintiff in connection with said spill.
The court makes no finding with respect to any statutory fine or penalties sought to be imposed by the State except that Lincoln shall be obligated to defend against any legal action with respect thereto. The court notes the public *894 policy espoused by the Court of Appeals in Hartford Acc. & Ind. Co. v Village of Hempstead (48 NY2d 218, 228), which proscribed insurance coverage for punitive damages. However, on the other hand, it does appear that any fines which may be imposed by the State may in whole or in part be a result of a dilatory or bad-faith disclaimer and/or non-cooperation by the carrier. There is not enough information for the court to dispose of these issues and it would be appropriate that they be decided by the trier of fact should any of the proceedings herein reach that stage.
The seventh affirmative defense in defendant Lincoln’s answer alleges that the insured plaintiff failed to give the defendant or any of its agents the requisite notice required by the terms of said policy in that it failed to give notice as soon as practicable. The court finds this defense to be without merit. As soon as plaintiff was made aware of the oil spill in the adjoining wetlands it notified its insurance agent, codefendant Rhulen, who in turn immediately notified Lincoln. The record is clear as to the actions of Lincoln or its agents ‘thereafter. On June 8, 1981 an adjuster for Lincoln advised the plaintiff of its investigation into the occurrence and conveyed a reservation of rights with respect to a delayed notice of the same. Again, there is no denial that the adjuster’s investigation was completed on or about June 15, 1981, and there was no further action taken by the carrier until September 4, 1981, when it advised the plaintiff’s attorney in a letter that it was disclaiming coverage on the grounds that the clean-up costs were not “property damage” under the terms of the policy.
The aforesaid reservation of rights letter has no relevance to the question of whether the insurer timely sent a notice of disclaimer or denial of coverage (Hartford Ins. Co. v County of Nassau, supra, p 1029; Allstate Ins. Co. v Gross, 27 NY2d 263). The grounds asserted in this affirmative defense were not raised in the aforesaid letter of disclaimer dated September 4, 1981. Thus, Lincoln has waived its right to assert these grounds now (General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864). Additionally, any assertion of a denial of coverage upon these grounds is otherwise precluded as a matter of law as any notice with respect to *895 the same was not given as soon as was reasonably possible under the terms of subdivision 8 of section 167 of the Insurance Law (Hartford Ins. Co. v County of Nassau, supra).
The plaintiff’s motion for summary judgment with respect to the first cause of action in its first amended complaint is hereby granted to the extent set forth herein-above. Defendant Rhulen’s cross motion dismissing the second and seventh affirmative defenses of defendant Lincoln is hereby granted pursuant to CPLR 3211 (subd [b]). Defendant Rhulen’s cross motion for summary judgment with respect to its first and third cross claims is hereby granted but denied with respect to the second cross claim.