George Muhlstock & Co., Respondent, v American Home
Assurance Company, Appellant.

First Department, May 15, 1986

## APPEARANCES OF COUNSEL

*Norman B. Arnoff* of counsel *(Linda K. Bernstein* with him on the brief; *Arnoff & Merin, P. C.,* attorneys), for appellant.

*Carolyn L. Ziegler* of counsel *(Flemming, Zulack & Williamson,* attorneys), for respondent.

## OPINION OF THE COURT

FEIN, J.

Plaintiff, a firm of accountants, was insured by defendant under an accountants' liability policy. When plaintiff was made a defendant in a class action suit in Federal court, it called upon defendant to defend in that action. Defendant declined to do so. Plaintiff defended and then settled the class action. It brought this action against the insurer to recover the amounts paid in settlement of the class action, plus attorneys' fees for the defense of that action.

Under the policy, the insurer agreed in pertinent part as follows:

*"Accountants' Professional Liability:* To pay on behalf of the insured, all sums which the insured shall become legally obligated to pay for damages, other than damages for bodily injury to, or sickness, disease or death of any persons or for injury to or destruction of any tangible property, as the result of any claim or claims caused or alleged to have been caused by the insured, any accountant or accounting organization acting under contract with the insured or any partner or employee of any of the foregoing, in the performance of

professional services for others in the insured's professional capacity as an accountant, including but not limited to breach of contract not committed by the insured with affirmative intent:

"(a) through neglect, error or omission;

"(b) through dishonesty, misrepresentation or fraud, except if made or committed by or at the direction of the insured, any officer or partner of the insured with affirmative dishonesty or actual intent to deceive or defraud;

"(c) through civil libel or slander or defamation of character, except if committed in bad faith by an insured, or by any partner, officer or employee of the insured, and except loss and expense due to criminal libel or criminal slander by the insured, or by any partner, officer or employee of the insured."

The terms "professional service" and "insured" were defined as follows:

"The unqualified word 'insured' includes the named insured, any predecessor in business, and also any officer or partner thereof whether named or not, while acting within the scope of his duties as such and the heirs, executors, administrators and assigns of each insured, in their capacity as such. The insurance afforded to any partner applies also to such partner after his retirement from the insured firm but only as respects professional services performed prior to the effective date of retirement. Any change among the partners of the named insured, even though it results in a change in the name or business style of the named insured, shall not affect the validity of this insurance, but such change shall be reported to the company promptly and in no event later than the next anniversary date of the policy * * *

" 'Professional Service' as used in Insuring Agreement I means professional services performed by and advices given by the insured in the conduct of his practice, including, without limitation, duties performed or advices given in relation to matters of taxation."

In October 1976, a client of plaintiff sought its advice as to the advisability of purchasing an interest in a mining tax shelter known as S-J Minerals. One of plaintiff's partners reviewed the material and concluded that such investment was advantageous to the client. The partner also sought out the promoter to ascertain whether plaintiff's principal could purchase such an interest. He was informed that not only could plaintiff's client make such a purchase, but that the

promoter would pay plaintiff a 15% commission on the cash portion of purchases by additional clients of plaintiff. As a consequence of plaintiff's recommendations, approximately 50 additional individuals and entities invested in S-J Minerals and related tax shelters. Commission checks from the promoter totaling $180,525 were paid to plaintiff accounting firm. These proceeds were channeled from plaintiff accounting firm to a New Jersey partnership, Golf Court Associates, formed by plaintiff's principals in connection with their purchase of a unit of S-J Minerals.

In late 1978, the SEC commenced an action against various parties in connection with these offerings, including plaintiff accounting firm, which ultimately entered into a consent decree in that case. Defendant insurer was never asked to defend the SEC action. Two weeks later a class action was brought in the United States District Court for the Southern District of New York in which plaintiff and 46 other parties were sued. In connection with plaintiff's request that defendant insurer defend and indemnify it in this Federal class action, plaintiff submitted to defendant the second amended complaint in that action. That complaint was amended twice more. Its final version was the fourth amended complaint. The allegations against plaintiff in that complaint were made in paragraph 62 thereof, which reads as follows: "George Muhlstock & Co. ('Muhlstock'), of 21 East 40th Street, New York, New York, is a certified public accounting firm which offered and sold limited partnership interests in S-J, S-J II and S-J III to members of the class, for which it received $185,000 in undisclosed sales commissions, even though it knew, among other things, that the Offering Memoranda stated that no sales commissions would be paid."

The class action complaint also alleged misrepresentations and omissions in the offering memoranda, a conspiracy to defraud, and violations of fiduciary obligations owed to the class by others, which sellers, such as plaintiff, aided and abetted, all in violation of the Federal Securities Act of 1933, the Federal Securities and Exchange Act of 1934, and New York General Business Law § 352-c (the "Martin Act"). The provisions of paragraph 62 were incorporated in each cause of action pleaded against plaintiff.

Defendant insurer examined one of plaintiff's officers after service of the second amended complaint in the Federal class action. On that basis, and upon an examination of the complaint in that action, defendant insurer disclaimed coverage.

Coverage was denied because plaintiff was being sued not for damages caused by plaintiff's performance of professional services for others in its capacity as an accountant, but rather by reason of its action as a seller of securities or a broker along with many other similarly situated nonaccounting firm defendants.

Plaintiff accounting firm defended itself in the Federal class action. In March 1983, plaintiff submitted the fourth amended complaint to defendant and again requested defendant to undertake its defense. Defendant declined to alter its disclaimer. Plaintiff then settled the Federal class action against it, making no admissions but agreeing to pay the $180,525 it had received as commissions in the sale of S-J Minerals to the members of the complainant class in that action. Plaintiff's attorney in the Federal class action submitted a $75,000 bill for services in connection with the defense of that action.

In this action plaintiff seeks damages in the amount of $255,525, representing its claim for legal expenses and the settlement paid in the Federal class action.

After answer, defendant moved to dismiss the complaint in the action pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, and for summary judgment dismissal under CPLR 3212. The defense was that the allegations in the Federal class action fell entirely outside the liability policy. It was noted that plaintiff, as a defendant in the class action, was charged with receiving commissions in a fraudulent sale of tax shelter securities without disclosing the receipt of those commissions. Plaintiff cross-moved for summary judgment asserting that its role in connection with the sale of the tax shelters was advice and that all clients who did purchase had been advised that plaintiff would receive a sales commission. It was also asserted that defendant had indemnified another accounting firm, which was also a defendant in the Federal class action. In reply, defendant insurer asserted it had settled with that accounting firm on an understanding that such settlement would have no estoppel effect with respect to the interpretation of the policy.

Special Term found defendant liable for plaintiff's reasonable expense in defending the Federal class action, and left for determination at trial the amount of such expense and whether there was an obligation to indemnify. The court found that the broad range of the policy covering "services performed by and advices given by the insured in the conduct

of his practice" clearly covered plaintiff when it recommended the tax shelters and that the presence of a sales commission, disclosed or not, ethical or not, did not change the nature of the transaction. It further found that the Federal class action complaint did not allege facts with sufficient definiteness to clearly bring it within the exclusionary "affirmative dishonesty or actual intent to deceive or defraud" language. Thus, the insurer was obligated to defend.

■ We disagree. In our view the allegations of the Federal class action complaint assert claims entirely outside the scope of the insurance policy. It has long been settled that in determining whether an insurer has a duty to defend, the issue turns upon whether the allegations of the complaint in the underlying action are within the scope of the risk covered by the policy *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322).

We deal here with both the obligation to defend and the obligation to pay. The duty to defend is broader than the duty to indemnify *(Goldberg v Lumber Mut. Cas. Ins. Co.,* 297 NY 148; *Grand Union Co. v General Acc., Fire & Life Assur. Corp.,* 254 App Div 274, *affd* 279 NY 638; *American Home Assur. Co. v Port Auth. of N. Y. & N. J.,* 66 AD2d 269). This principle flows from the fact that the duty to defend arises from the insurer's contractual obligation to the insured, whereas the liability to indemnify depends upon the law of negligence. With respect to the obligation to defend, the question is not whether the plaintiff can maintain a cause of action against the insured, but whether he can state facts which bring the insured within the coverage. If facts are stated which bring the insured within the coverage, the policy requires the insurer to defend, whatever the insured's ultimate liability *(Grand Union Co. v General Acc., Fire & Life Assur. Corp., supra).* The test is not the ultimate proof of the allegations but rather whether sufficient facts are stated so as to invoke coverage under the policy. The duty to defend arises not from the probability of recovery but from its possibility, no matter how remote. Any doubt as to whether the allegations state a claim covered by the policy must be resolved in favor of the insured as against the insurer.

As stated in *American Home Assur. Co. v Port Auth. of N. Y. & N. J.* (66 AD2d, at p 277), "In determining whether there is a duty to defend, the point of departure is the allegations of the complaint in the action brought against the insured. If the allegations in the underlying action are, on

their face, within the compass of the risk covered by the policy, the insurer is obliged to assume the defense of the action * * * Where the facts alleged clearly do not bring the case within the coverage of the policy, the insurer is free of such obligation".

As stated in *International Paper Co. v Continental Cas. Co.* (35 NY2d, at p 326), "While policy coverage such as the one here involved is often referred to as 'liability insurance' it is clear that it is, in fact, 'litigation insurance' as well."

■ Defendant's contention, that the settlement of the underlying action demonstrates that it had no obligation to defend because the terms of the settlement plainly established that it had no duty to pay, overlooks the distinction. "As noted, the duty to defend is broader than the duty to pay and comprehends the possibility that an insurer may be required to furnish a defense in an action, although it may not ultimately be liable to indemnify the insured." *(Sucrest Corp. v Fisher Governor Co.,* 83 Misc 2d 394, 404, *affd* 56 AD2d 564.)

Thus, the determination of the obligation to defend in our case depends on the status of the pleadings as they were at the time plaintiff called upon the insurer to defend in the underlying action and the insurer tendered its disclaimer. This determination turns on the language of the policy. Where a policy of insurance is written in such a manner as to be doubtful or uncertain in meaning, all ambiguities must be resolved against the company and in favor of the insured *(Hartol Prods. Corp. v Prudential Ins. Co.,* 290 NY 44; *Bronx Sav. Bank v Weigandt,* 1 NY2d 545; *American Home Assur. Co. v Port Auth. of N. Y. & N. J., supra).* Where the insurer relies upon the exclusionary clause in a policy, it must be established that the insurer's interpretation of the policy is the only construction that can fairly be placed upon the language *(Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 390). With respect to the obligation to pay, liability depends upon the basis for liability adjudicated against the insured in the main action *(Prashker v United States Guar. Co.,* 1 NY2d 584).

However, where the facts alleged plainly do not bring the case within the coverage of the policy, there is no obligation to defend *(Lionel Freedman, Inc. v Glens Falls Ins. Co.,* 27 NY2d 364, *rearg denied* 28 NY2d 859).

■ Here, the policy language plainly covers only liability for breach of duty as an accountant. No language in the policy

supports the conclusion that it intended to provide insurance for plaintiff acting as a broker for a commission, albeit such relationship may have grown out of the accountant's performance of his usual duties, including tax shelter advice and passing upon whether the transactions involved qualified for the tax relief sought. Thus, the insurer had a right to decline to defend the underlying action. This is made clear from the terms of plaintiff's settlement of the underlying action. Plaintiff paid its clients the commission which it had obtained from the sellers of the tax shelters. This was plainly no part of its compensation for accounting services. There is simply no basis for the claim that the activity which brought about the SEC complaint and the Federal class action complaint was anything but that of a broker or finder for a commission. This was clearly not accountant's advice.

The Federal class action complaint founded plaintiff's alleged liability solely upon its role in offering for sale tax shelter limited partnership interests. It is patent that such role was that of a broker, dealer or finder. It was not the performance of professional service as an accountant. Its role here was subject to the Federal securities regulations. Moreover, it created a conflict of interest in violation of professional guidelines. Plaintiff was receiving a sales commission on investments it was recommending for purchase by clients. Its compensation came from an entity other than the client. The gravamen of the Federal class action complaint was plaintiff's actions as a broker and its receipt of a sales commission not disclosed in the offering memoranda. The fact that plaintiff rendered advisory services in connection with the same securities was not a subject of the Federal class action. Accordingly, it is totally irrelevant in determining defendant insurer's duty to defend.

Nothing in the Federal class action complaint asserts liability against plaintiff premised upon any specific act or omission in connection with the preparation or auditing of books or accounts and financial statements, or in the preparation of opinions and projections upon tax and accounting matters. It is alleged only that plaintiff engaged as a broker in the unlawful sale of securities, knowing that the information furnished to investors was false and misleading. Such activity is palpably not the rendition of accounting services.

The class action complaint alleges nothing more than fraudulent sales of securities by plaintiff, not professional malpractice or any type of claim arising from the rendition of profes-

sional service. The complaint alleges that plaintiff received securities sales commissions from the promoters (and not time-based fees from its clients), in reality acting as a "finder" or "broker", not only in terms of receiving the securities sales commissions, but in processing the funds and documents to complete the tax shelter sales. Even applying the judicial doctrine of strict construction against the insurer, the class action complaint and the factual context in which it arose reflected claims only against plaintiff as an active participant in the offer and sale of securities, and not as a certified public accounting firm.

The definition of "public accountancy" in Education Law § 7401 is instructive: "The practice of the profession of public accountancy is defined as holding one's self out to the public, in consideration of compensation received or to be received, offering to perform or performing for other persons, services which involve signing, delivering or issuing or causing to be signed, delivered or issued any financial, accounting or related statement or any opinion on, report on, or certificate to such statement if, by reason of the signature, or the stationery or wording employed, or otherwise, it is indicated or implied that the practitioner has acted or is acting, in relation to said financial, accounting or related statement, or reporting as an independent accountant or auditor or as an individual having or purporting to have expert knowledge in accounting or auditing." It is clear that plaintiff, in doing what it did, did not come within this statutory definition of accountancy. Nor can plaintiff, even by charitable construction, bring itself within the penumbra of managerial and investment advisory services, which some accountants may claim as part of their professional practice.

Plaintiff was charged with acting as a broker. The term "broker" includes any person, firm, association or corporation which is "engaged in the business of effecting transactions in securities for the account of others" (15 USC § 78c [a] [4]; General Business Law § 359-e [1] [b]).

Plainly, plaintiff's legal duties and liabilities arose from the merchandising of securities, as opposed to the performance of professional accounting services. It may well be that lawyers and accountants on occasion capitalize on their associations with securities brokers or other persons who are engaged in the merchandising of securities, and, as a result of their conduct, transmute their status to that of finders or brokers. However, this is hardly practicing law or accountancy.

Plaintiff, in acting as a securities finder or broker and recording its securities sales commissions in a separate investment partnership, was not engaged in the activity of public accounting. Its activity cannot be construed as being within its professional accounting capacity and within the compass of the risk covered by the accountant's professional liability insurance policy it had purchased.

A breach of the covenant to defend makes the insurer liable to the insured for the reasonable counsel fees and necessary expenses, as well as the cost of settlement, unless the settlement is unreasonable or exorbitant *(Rosen & Sons v Security Mut. Ins. Co.,* 31 NY2d 342; *Sucrest Corp. v Fisher Governor Co.,* 83 Misc 2d, at p 406). However, where, as here, the settlement demonstrates that the liability of the plaintiff was founded upon its breach of duty as a broker, an activity not covered by the policy, the insurer is liable for neither the attorneys' fees and expenses nor the amount of the settlement. The settlement was plainly a satisfaction of claims against plaintiff as a broker, not as an accountant.

The order, Supreme Court, New York County (Burton S. Sherman, J.), entered March 25, 1985, which denied defendant's motion to dismiss the complaint and granted plaintiff's cross motion for summary judgment to the extent of holding defendant insurer liable for reasonable costs incurred by plaintiff in the defense of the underlying action and leaving the amount of such damages and the issue of defendant's duty to indemnify plaintiff to be resolved upon a trial, should be modified, on the law, to the extent of granting defendant's motion for summary judgment dismissing the complaint and denying plaintiff's cross motion for summary judgment in its entirety, and otherwise affirmed, with costs.

KUPFERMAN, J. P., SULLIVAN, CARRO and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on March 25, 1985, unanimously modified, on the law, to the extent of granting defendant's motion for summary judgment dismissing the complaint and denying plaintiff's cross motion for summary judgment in its entirety, and otherwise affirmed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.