OGDEN CORPORATION, Avondale Industries, Inc. and Connell Limited Partnership, Plaintiffs,

v.

The TRAVELERS INDEMNITY COMPANY and American Motorists Insurance Company, Defendants.

The TRAVELERS INDEMNITY COMPANY, Third–Party Plaintiff,

v.

EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company and National Union Fire Insurance Company, Third–Party Defendants.

No. 88 Civ. 4269 (RPP).

United States District Court, S.D. New York.

Sept. 22, 1989.

Fryer, Ross & Gowen, New York City by Hugh N. Fryer, for plaintiffs.

Simpson Thacher & Bartlett, New York City by Seth Ribner, for defendant Travelers Indem. Co.

Drinkle Biddle & Reath, Philadelphia, Pa. by James M. Sweet, for American Motors Ins. Co.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs have brought this action seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201 (1982), that the defendants, The Travelers Indemnity Company ("Travelers") and American Motorists Insurance Company ("AMICO") are obligated, under certain comprehensive general liability ("CGL") insurance policies, to defend and indemnify plaintiffs in connection with an action brought in the United States District Court for the Central District of California (the "California Action") by Bethlehem Steel Corporation ("Bethlehem") against plaintiffs.

Subject matter jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). Plaintiffs are Ogden Corporation ("Ogden"), a Delaware Corporation, Avondale Industries, Inc. ("Avondale"), also a Delaware Corporation, and Connell Limited Partnership ("CLP"), a Delaware limited partnership. Defendants Travelers and AMICO are Connecticut and Illinois corporations, respectively.

This action is now before the court on plaintiffs' motion pursuant to Fed.R.Civ.P. 56(a) and 54(b), for partial summary judgment, with respect to the issue of defendants' duty to defend plaintiffs in the California Action.[1] Travelers and AMICO have cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56(b). For the following reasons, plaintiffs' motion is denied, and both Travelers' and AMICO's cross-motions are granted.

## I. FACTS

The amended complaint in the California Action (the "Bethlehem Complaint") alleges that Luria Brothers & Company ("Luria"), a former subsidiary of Ogden and a predecessor of Avondale and now owned by CLP, operated scrap metal processing, storage, and other industrial operations on certain real property in Vernon, California (the "Leased Property"). It further alleges that those operations "proximately caused hazardous substances to be released onto the [Leased Property] and contaminate the soil of the [Leased Property] ... and that said contamination occurred continuously during the years 1950 through 1983." Exhibit C to the Affidavit of Hugh N. Fryer at ¶ 9. The Bethlehem Complaint includes several counts, which separately allege that Luria either intentionally or negligently caused the contamination. The Bethlehem Complaint alleges that "[i]n 1985, BETHLEHEM was required by the California Department of Health Services ... to undertake remedial and removal actions to clean up the hazardous substances contaminating the [Leased Property]." *Id.* at ¶ 11. The Bethlehem Complaint seeks recovery of, *inter alia,* past and future response costs and other compensatory damages.

Plaintiffs in this action claim coverage under a series of (1) four successive CGL policies issued by Travelers covering the period of July 5, 1975 through December 1, 1984 (the "Travelers Policy Period"), and (2) eight successive CGL policies issued by AMICO covering the period of July 5, 1967 through July 5, 1975. Each defendant disclaims coverage for several reasons as discussed below.

## II. SUMMARY JUDGMENT

Summary judgment under Fed.R.Civ.P. 56(c) will be granted only if the movant

---

**1.** Initially, plaintiffs also filed a motion for a preliminary injunction requiring the defendants to undertake their defense in the California Action. However, the California Action has since been settled and because the threat of irreparable harm no longer exists plaintiffs have withdrawn their motion for a preliminary injunction.

shows that (1) there is no genuine issue as to any material fact, and (2) movant is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the "fundamental maxim" is that the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987) (quoting *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). "Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* at 57.

## III. THE INTERPRETATION OF INSURANCE CONTRACTS

As stated recently by the New York Court of Appeals in a similar case, under New York law,[2]

> The duty to defend insureds—long recognized as broader than to indemnify—is derived from the allegations of the complaint and the terms of the policy. If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend [citation omitted]. Moreover, when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.'

*Technicon Electronics Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 71, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989) (quoting *International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974)). "Any doubt as to whether the allegations state a claim covered by the policy must be resolved in favor of the insured as against the insurer." *George Muhlstock & Co. v. American Home Assurance Co.*, 117 A.D.2d 117, 122, 502 N.Y.S.2d 174, 178 (1st Dep't 1986).

With these principles in mind, the summary judgment motions will be separately considered with respect to each defendant.

## IV. TRAVELERS

Each CGL policy that Travelers issued to plaintiffs excluded coverage for "bodily injury or property damage arising out of the discharge, dispersal, release or escape ... of contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water," except if "such discharge, dispersal, release or escape ... is sudden and accidental" (the "Pollution Exclusion").

In accordance with the *Technicon* decision, this Court finds that the allegations in the Bethlehem Complaint—that Luria intentionally operated a scrap processing facility that continuously contaminated the Leased Property over a thirty-three year period—constitutes a pleading of non-accidental and non-sudden discharge. The Pollution Exclusion, then, is properly invoked by Travelers.

The Pollution Exclusion, virtually the same as those considered by other courts in similar cases, derives from New York Insurance Law former § 46. The policy behind § 46, which was in effect during much of the time the policies at issue here were in effect, was to encourage a clean environment by eliminating "subsidized pollution." *Allstate Insurance Co. v. Klock Oil Co.*, 73 A.D.2d 486, 426 N.Y.S.2d 603 (4th Dep't 1980).

In *Technicon*, the New York Court of Appeals affirmed the decision of the Appellate Division, Second Department, that "sudden and accidental" exception to the Pollution Exclusion is unambiguous as a matter of law. Further, the court made clear that the discharge must be both sudden *and* accidental for the exception to apply.

The court rejected the insured's argument that intentional acts resulting in dis-

---

**2.** The plaintiffs and Travelers agree that New York law applies to the interpretation of the insurance contracts in question in this action.

AMICO accepts such position for purposes of this motion only.

charge of contaminants are "accidental" if it did not intend to cause environmental harm or the specific injuries alleged. The Court of Appeals held "that argument fails because the pollution exclusion clause, by its own terms, does not distinguish between intended or unintended consequences of intentional discharges; rather, it excludes from coverage liability based on all intentional discharges of waste whether consequential damages were intended or unintended." The Court of Appeals went on to state "to accept [the insured's] interpretation of the pollution exclusion clause would otherwise render that clause meaningless in context." 74 N.Y.2d at 74, 544 N.Y.S.2d 531, 542 N.E.2d 1048.[3] Thus, plaintiffs' argument that the "sudden and accidental" exception applies because they did not intend to pollute must be rejected.

■ Here, unlike *Technicon,* the underlying complaint does not allege specifically that Luria intentionally made discharges. However, the Bethlehem complaint cannot reasonably be read as claiming that the discharges from Luria's facility were accidental. The Bethlehem Complaint alleges that Luria conducted its operations from 1950 to 1983 and that these "operations ... caused [the] substances to be released," resulting in contamination that "occurred continuously during the years 1950 through 1983." Continuous discharges caused by intentional operations over a thirty-three year period cannot be construed to be accidental.

Because the Court of Appeals held that the discharge in *Technicon* was not accidental as a matter of law, it did not "rule on the conjunctive prerequisite bringing the exception into play—suddenness—because it would be superfluous here." *Id.* at 77, 544 N.Y.S.2d 531, 542 N.E.2d 1048. Nevertheless, this Court finds that the Pollution Exclusion clause is also properly invoked here by Travelers on the grounds that the allegations in the Bethlehem Complaint do not relate to a sudden discharge. In doing so, this Court first considers Appellate Division determinations.[4]

The Appellate Division, Second Department, in its *Technicon* opinion, stated that the sudden and accidental exception applies to an event "which is unexpected, unintended and occurs over a short period of time." *Technicon,* 141 A.D.2d 124, 137, 533 N.Y.S.2d 91, 99 (2d Dep't 1988). Subsequently, in *Powers Chemco Corp. v. Federal Insurance Co.,* 144 A.D.2d 445, 533 N.Y.S.2d 1010, 1011–12 (2d Dep't 1988), the Appellate Division, Second Department, unequivocally confirmed this holding in *Technicon.*

In *State of New York v. Amro Realty Corp.,* 697 F.Supp. 99 (N.D.N.Y.1988) decided prior to the *Technicon* and *Powers Chemco Corp.* decisions, the underlying complaint alleged that the offending release of chemicals was continuous for a period of more than twenty years. The court held that the "sudden and accidental" exception to the pollution exclusion did not apply, because "there is no possibility here that the 'escape' of the pollutants occurred

**3.** In *Technicon,* the Court of Appeals found inapposite the approach of the Appellate Division, Fourth Department, in such cases as *Allstate Ins. Co. v. Klock Oil Co.,* 73 A.D.2d 486, 426 N.Y.S.2d 603 (4th Dep't 1980). The Court of Appeals noted that in *Klock,* the alleged discharge itself was unintentional and accidental. The Court of Appeals stated:

... reliance on *Klock* and the quoted dictum are unavailing because the court was not there addressing the discharge of pollutants—the critical policy language here—but rather the resulting damage argumentation construct. *McGroarty v. Great American Ins. Co.* [36 N.Y.2d 358, 368 N.Y.S.2d 485, 329 N.E.2d 172] ... used by *Klock* in that connection, is a case which did not even concern the pollution exclusion clause but rather turned on the term "accident" in the context of a policy

covering property damage "caused by accident." The policy in *McGroarty* made the fulcrum of coverage rest on the injurious results, not the precipitating discharge acts themselves. In sharp contrast, the pollution exclusion clause at issue here is directed at the polluting act itself—the discharge, dispersal or escape.

*Technicon, supra,* 74 N.Y.2d at 534, 544 N.Y.S.2d 531, 542 N.E.2d 1048.

**4.** An appellate division ruling is a "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *State of N.Y. v. Amro Realty Corp.,* 697 F.Supp. 99, 109 (N.D.N.Y.1988).

through one brief event." *Id.* at 109. Chief Judge McCurn reasoned that "sudden" means "happening without previous notice or on very brief notice; unforeseen; unexpected; unprepared for...." *Id.* at 110. He observed that "even if the term accidental is determined from the insureds' point of view there is no use of the word 'suddenly' which is consistent with events transpiring over a twenty year period." *Id.*

In *EAD Metallurgical Inc. v. Aetna Casualty and Surety Co.*, 701 F.Supp. 399 (W.D.N.Y.1988), also decided prior to the *Technicon* and *Powers Chemco Corp.* decisions, the court held that the "sudden and accidental" exception did not require the insurer to defend when the underlying complaint was "consistent in its portrayal of the alleged acts of pollution as ongoing." *Id.* at 402. The complaint there alleged that the disposal took place throughout the insured's seven years of operation. The court noted that to find that the complaint in that case alleged a sudden and accidental discharge would render the pollution exclusion almost meaningless.

■ This Court is persuaded that the New York Court of Appeals would follow the *Technicon, Powers Chemco Corp., Amro Realty Corp.* and *EAD Metallurgical Inc.* decisions in the case at bar and hold the sudden and accidental exception applies only to an event "which is unexpected, unintended and *occurs over a short period of time.*" *Technicon,* 141 A.D.2d at 137, 533 N.Y.S.2d at 99 (emphasis added). These decisions are consistent with both the plain meaning of the word "sudden" and common sense. For this Court to hold that Luria's intentional actions causing the release of pollutants over a period of more than thirty years falls within the sudden and accidental exception would render the pollution exclusion clause meaningless.

Since the Pollution Exclusion relieves Travelers from defending plaintiffs in, and indemnifying plaintiffs with respect to, the California Action, Travelers' remaining arguments need not be considered. Plaintiffs' motion for partial summary judgment against Travelers is denied, and Travelers' cross-motion for summary judgment is granted.

## V. AMICO

Two of the CGL insurance policies AMICO issued to plaintiffs, covering the period of July 5, 1973 through July 5, 1975, contained virtually the same pollution exclusion clause that appeared in the Travelers policies. For the reasons discussed above, this Court finds as a matter of law that such pollution exclusion relieves AMICO from indemnifying plaintiffs for any liability resulting from Luria's alleged contamination of the Leased Property from July 5, 1973 through July 5, 1975. However, the same pollution exclusion clause is not contained in AMICO's earlier six CGL insurance policies covering the period of July 5, 1967 to July 5, 1973. Accordingly, in the absence of any other applicable exclusion or reason to disclaim coverage, AMICO would have a duty to defend plaintiffs on the basis of the earlier policy coverage.

■ AMICO disclaims coverage on the grounds that plaintiffs failed to comply with the notice-of-occurrence provision contained in each CGL policy. Each CGL policy required that

> [i]n the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to time, place and circumstances thereof, and any names and addresses of the injured and of available witnesses shall be given by or for the insured to [AMICO] ... as soon as practicable.

(The "Notice Requirement"). Under New York law, plaintiffs' compliance with the Notice Requirement was a condition precedent to all of AMICO's duties under the policies, including its duty to defend. *See Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 273 (2nd Cir.1987) (citing cases). "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a

claim." *Id.* at 272. New York courts have consistently construed the phrase "as soon as practicable" in an insurance policy to mean notice given within a reasonable time under all the circumstances. *Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 293 N.E.2d 76, 340 N.Y.S.2d 902, 906–07 (1972). The insurer is relieved of all coverage obligations if timely notice is not given, regardless of the lack of prejudice to such insurer. *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Companies,* 748 F.2d 118, 121 (2d Cir.1984); *Power Authority of New York v. Westinghouse Electric Corp.,* 117 A.D.2d 336, 502 N.Y. S.2d 420, 422 (1st Dep't 1986).

AMICO contends that plaintiffs here failed to comply with the Notice Requirement as a matter of law. On April 22, 1988, after having received the Bethlehem Complaint, plaintiffs first notified AMICO of the claim of contamination of the Leased Property. Franklin Affidavit, ¶ 3. However, it is clear that as early as 1985 plaintiffs were put on notice by Bethlehem of the California Department of Health Services cleanup requirements relating to the Leased Property and should have been aware that Bethlehem would assert a claim against plaintiffs for response costs and other damages arising out of Luria's alleged contamination of the Leased Property during the years of its scrap metal processing and storage operations on the property.

The Bethlehem Complaint alleges that Bethlehem "commenced ... cleanup activities on the subject property on or about October 23, 1985, and substantially completed said activities on or about December 30, 1985." Plaintiffs' Exhibit C at ¶ 12. The complaint also alleges that "[d]uring BETHLEHEM's study of the hazardous waste contamination and subsequent cleanup, BETHLEHEM kept LURIA advised of the nature and extent of hazardous substance contamination on the subject property, the planning and progress of the cleanup, and the expected and actual response costs incurred by BETHLEHEM. BETHLEHEM requested that LURIA assist in the cleanup and pay the response costs incurred by BETHLEHEM." Plaintiffs'

Exhibit C at ¶ 15. These allegations are born out by the moving papers. By letter dated July 25, 1985 (the "July 25, 1985 Letter"), Bethlehem informed Luria of the contamination of the Leased Property, and stated that it "appeared" that such contamination was caused by Luria's scrap yard operations. Cannaughton Aff. at Exhibit A. In such letter, Bethlehem also informed Luria that it had engaged a firm to audit its environmental survey, and to present its finding and recommended solutions to the appropriate regulatory agency. Bethlehem unequivocally told Luria that the "cost of correcting the environmental problems should be shared by Luria and Bethlehem." *Id.* A "clean-up" feasibility study was attached to such letter. Plaintiffs admit that "[i]n 1985, Bethlehem advised [Luria] that they were selling the site, and in connection with that sale, were remediating environmental contamination of the entire site, including the portion that had been leased to [Luria]...." Blauvelt Aff. at ¶ 6.

Moreover, plaintiffs' conduct and contentions clearly indicate that they were aware of the possibility of a claim by Bethlehem long before April 22, 1988. In 1985, long before Bethlehem commenced its action, "Ogden's insurance department put Travelers on notice of the potential Bethlehem claim." Joyce Affidavit ¶ 5; *see* Transcript of February 10, 1989 Hearing at 18–19. Plaintiffs contend that they only notified Travelers, the most recent insurer, because Bethlehem was not "claiming occurrences for any specified time until it received the Bethlehem complaint in April 1988." Plaintiffs' Reply Memorandum of Law at 27. This notice to Travelers is an admission that they were fully aware of the possibility of a claim by Bethlehem, and the necessity of notifying their insurer of such claim. Plaintiff's contention that Bethlehem was not claiming "specific occurrences" and that AMICO was not the most recent insurer is irrelevant. As indicated above, Bethlehem informed Luria in the July 25, 1985 Letter that the contamination was caused by its scrap metal operations, which were conducted from 1950 through 1983. An insurer need not be given every

detail to be on notice of a possible claim. Furthermore, plaintiffs provide no reason why they might have concluded that only Luria's scrap metal operations during the Travelers Policy Period caused the contamination and not the operations during the AMICO Policy Period.[5]

AMICO did not receive any notice of this environmental claim from plaintiffs until over two and one-half years after plaintiffs received the July 25, 1985 Letter. "Ordinarily, the reasonableness of any delay is a matter for trial. In the absence of an excuse or mitigating factors, however, the issue is a legal one for the court...." *Amro Realty Corp.*, 697 F.Supp. at 104. The Court is unable to find any excuse or mitigating factors here. In *Luria Brothers & Co. v. Alliance Assurance Co.*, 82 Civ. 3257(CLB), slip op. (S.D.N.Y.1984), Chief Judge Brieant held that the court may excuse delay based on the insured's good faith belief as to non-liability. *Id.* at 4. This belief of non-liability must be "reasonable under all the circumstances." *Id.* It is "relevant whether and to what extent the insured has inquired into the circumstances of the accident or occurrence." *Id.*

Plaintiffs contend that their good faith belief in Luria's non-liability excuses the delay in notifying AMICO. Plaintiffs rely on the affidavit of Edward J. Joyce, who has been in-house legal counsel to plaintiffs and Luria since 1968. Mr. Joyce states that after receiving the July 25, 1985 Letter, he "caused an investigation to be made and met on several occasions with officials of Bethlehem." Joyce Aff. ¶ 4. He also stated that although he discovered certain contamination of the Leased Property, "there was no conclusive evidence that Luria's operations were the cause of the [contamination]...." *Id.* Finding conclusive evidence of the cause of contamination is not necessary before giving notice of "the possibility of a claim"; such a requirement would virtually eliminate the notice requirement from the policy. Plaintiffs also seek to demonstrate good faith belief of

non-liability based on a letter dated June 27, 1986 that Mr. Joyce sent to Bethlehem. Cannaughton Aff. at Exhibit A. In the letter, Mr. Joyce indicated the lack of evidence which supported Bethlehem's potential claim. Mr. Joyce suggested that the Leased Property may have already been contaminated at the time Bethlehem acquired, or Luria leased, such property. He also stated that the lease agreement between Luria and Bethlehem does not make Luria responsible for the alleged contamination. Again, these legal arguments against liability do not demonstrate a good faith belief in non-liability, *i.e.*, no possibility of a claim. Indeed, they seem to demonstrate a recognition of the fact that a claim by Bethlehem was likely. The same arguments could have been, and possibly were, made with respect to the Travelers policy period, and plaintiffs had advised Travelers of the claim in 1985. *See* Transcript of February 10, 1989 Hearing at 18–19. The notice to Travelers demonstrates that plaintiffs' assertion of a good faith belief of non-liability is without merit.

■ Plaintiffs also contend that they should be excused from the Notice Requirement because timely notice would have been futile or useless in light of AMICO's many grounds of disclaiming coverage. Plaintiffs cite two cases for the proposition that "[u]nder New York law policyholders' alleged late notice, or total lack of notice, has been excused if the notice would have been futile or useless." *See* Plaintiffs' Reply Memorandum of Law at 28, *citing DeForte v. Allstate Ins. Co.*, 81 A.D.2d 465, 471, 442 N.Y.S.2d 307 (4th Dep't 1981) and *H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*, 661 F.2d 264, 270 (2d Cir.1981). These cases do not support plaintiffs' argument. In both cases the courts simply relieved the insured of certain obligations after the insurer had already disclaimed coverage. *See Amro Realty Corp.*, 697 F.Supp. at 104. AMICO did not disclaim coverage until after it re-

---

**5.** Even if the Notice Requirement was not triggered by the July 25, 1985 Letter, plaintiffs were aware of the possibility of a claim as of June 27, 1986. By letter dated June 27, 1986, Luria

wrote Bethlehem and specifically stated that it was writing such letter "in connection with the environmental claim at the [Leased Property]." Cannaughton Aff. at Exhibit A.

ceived notice of the Bethlehem Complaint on April 22, 1989. "Moreover, there is a lack of any reported authority for the proposition that 'futility' constitutes a valid excuse for timely notice of occurrence. Consequently, the Court does not accept the [plaintiffs'] futility argument as a legal excuse [under New York law] for untimely notice of occurrence." *Id.* Finally, plaintiffs' contend that AMICO should be precluded from disclaiming coverage because AMICO failed to give plaintiffs notice of its disclaimer until approximately ten weeks after AMICO was given notice of the Bethlehem Complaint. In the absence of statute, the validity of the notice of disclaimer is governed by the common law doctrines of waiver or equitable estoppel. Plaintiffs have not shown a basis for invoking those doctrines.

Plaintiffs argue that N.Y. Ins. Law § 3420(d) (McKinney's 1985) should be applied to the facts of this case. Section 3420(d) provides that "an insurer ... shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state ... as soon as reasonably possible...." This Court rejects plaintiffs' contention that § 3420(d) applies to property damage occurring in California. Section 3420(d), by its express terms, is limited to accidents (1) involving death or bodily injury, and (2) occurring in New York. Section 3420(d) is not applicable because the alleged accident in this case did not occur in New York. Although the New York Court of Appeals has not yet interpreted the meaning of the words "within this state" in § 3420(d), these words are clear and that Court has interpreted the meaning of the same words within § 3420(f)(1). Section 3420(f)(1) mandates an "uninsured motorist clause" in insurance policies in connection with injuries caused by accident "in this state." In *Sentry Insurance Co. v. Amsel*, 36 N.Y.2d 291, 327 N.E.2d 635, 367 N.Y.S.2d 480 (1975), the New York Court of Appeals held that N.Y. Ins. Law 167(2–a), subd. 8, (now codified in § 3420(f)(1)) does not apply to accidents occurring outside New York.

This Court is persuaded that the New York Court of Appeals would afford the words "within this state" in § 3420(d) the same natural and obvious meaning that it afforded such words within § 3420(f)(1). It is a rule of statutory construction that "legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction." McKinney's Statutes § 94 (1971).

Decisions of the Appellate Division support this view of § 3420(d). The Appellate Division, First Department, in *Bellafonte Re–Ins. Co. v. Volkswagenwerk AG*, 102 A.D.2d 753, 476 N.Y.S.2d 890 (1st Dep't 1984), held that N.Y. Ins. Law § 167(8) (now codified in § 3420(d)) does not apply to accidents occurring outside New York. *See also Grening v. Empire Mutual Insurance Co.*, 101 A.D.2d 550, 552, 475 N.Y. S.2d 423 (1st Dep't.1984) (N.Y. Ins. Law 167(8) not applicable to accident occurring in Maryland).

Plaintiffs rely on *Kasson & Keller, Inc. v. Centennial Ins. Co.*, 79 Misc.2d 450, 359 N.Y.S.2d 760, 764 (Sup.Ct. Montgomery County 1974) to support their contention that § 3420(d) is applicable to accidents outside New York. However, that case was decided before the New York Court of Appeals decision in *Sentry*, and is therefore not highly persuasive.

Plaintiffs also rely on *Newman v. Ketani*, 54 A.D.2d 926, 388 N.Y.S.2d 128 (2d Dep't 1976), which held that § 3420(d) applies to accidents which bear a substantial relation to New York. *Id.* 388 N.Y.S.2d at 130. The court did not support its holding with any reasoning. Here, the alleged occurrence in California has not been shown to bear any relation to New York, and this case is therefore distinguishable from *Newman*.

Second, § 3420(d) is not applicable because the alleged accident did not involve death or bodily injury. To the extent it

alleges damages, the Bethlehem Complaint alleges only property damage.[6] Except for *Kutsher's Country Club v. Lincoln Ins. Co.*, 119 Misc.2d 889, 465 N.Y.S.2d 136 (Sup.Ct. Sullivan County 1983), plaintiffs offer no support for their contention that § 3420(d) applies to accidents involving property damage. Although it applied § 3420(d) to an accident causing property damage in New York, the *Kutsher's* court offered no reason for its departure from the clear statutory language which makes that section applicable only to accidents involving death or bodily injury. This Court does not believe that the New York Court of Appeals would apply § 3420(d) to accidents involving property damage in California. "The courts in construing statutes should avoid judicial legislation; they do not sit in review of the discretion of the Legislature or determine the expediency, wisdom, or propriety of its action on matters within its powers." McKinney's Statutes § 73.

For the foregoing reasons, this Court finds that (1) plaintiffs failed to give AMICO timely notice of the possibility of a claim in connection with the contamination of the Leased Property, and (2) AMICO properly notified plaintiffs that it was disclaiming coverage with respect to plaintiffs claims in the present action.

Accordingly, the cross-motions of Travelers and AMICO are granted.

SO ORDERED.

Pollution Exclusion and the Notice Requirement, this Court need not reach that issue.