OPINION OF THE COURT
Herman Cahn, J.
Plaintiff, American Management Association (AMA), moves for a judgment, pursuant to CPLR 3212, declaring that defendant Atlantic Mutual Insurance Company (Atlantic Mutual) is obligated to defend and indemnify it in an underlying age discrimination action, Clancey v American Mgt. Assn. (US Dist Ct, SD NY, Nov. 21, 1990, 90 Civ 7570 [the Clancey action]). Defendant, Atlantic Mutual, cross-moves for a judgment declaring that it is not required to defend and indemnify plaintiff, and dismissing the action, with prejudice.
This is an action, for a declaration as to the rights of the parties under a general liability and umbrella insurance policy (policy No. 288-00-78 92), covering the period from January 24, 1989 to January 24, 1990, issued by Atlantic Mutual to AMA. AMA seeks reimbursement from Atlantic Mutual for the defense and settlement costs associated with the Clancey action, which was brought by former employees of AMA on November 21, 1990.
It is undisputed that AMA purchased a general liability and an umbrella insurance policy from Atlantic Mutual. Under the general liability endorsement, Atlantic Mutual agreed to provide AMA with insurance coverage for "personal injury” and "property damage” to which the policy applies, "caused by an occurrence.” The endorsement also provided that Atlantic Mutual "shall have the right and duty to defend any suit against [AMA] seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient”.
"Personal injury” is defined in the general liability endorsement to include "bodily injury”. "Bodily injury” is defined as follows: "Bodily injury, sickness or disease sustained by any person which occurs during the policy period”. An "occurrence” is defined as "an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from . the standpoint of the insured.”
*973 Under the umbrella endorsement, Atlantic Mutual agreed to indemnify AMA for the ultimate net loss in excess of the retained limit thereinafter defined, which AMA "shall become legally obligated to pay as damages by reason of the liability imposed upon [AMA] by law, or assumed by [AMA] under contract or on account of * * * Personal Injury Liability * * * Property Damage Liability, or * * * Advertising Liability to which this insurance applies, caused by an occurrence anywhere in the world.” The umbrella endorsement further provided, in part:
"With respect to any occurrence not covered by the insurance specified in the Umbrella Declarations or any other underlying insurance collectible by [AMA], but covered by the terms and conditions of this insurance except for the amount of retained limit specified in Item (2) of Insuring Agreement D, the Company shall:
"1) defend any suit brought against [AMA] alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but [Atlantic Mutual] may make such investigation, negotiation and settlement of any claim or suit as it deems expedient”.
"Personal injury” was defined in the umbrella endorsement to include "bodily injury, sickness, disease, disability, shock, mental anguish and mental injury * * * resulting therefrom”; as well as "racial, religious, sex or age discrimination (unless insurance thereof is prohibited by law) not committed by or at the direction of [AMA], but only with respect to the liability other than fines and penalties imposed by law which occurs during the policy period.” (Emphasis added.) An "occurrence” was defined to mean "an accident, or happening or event, or a continuous or repeated exposure to conditions, which unexpectedly or unintentionally results in personal injury, property damage.”
The umbrella policy contained a "drop down” clause obligating Atlantic Mutual to defend AMA in any suit covered by the umbrella policy, even if excluded from coverage under the primary policy.
On November 21, 1990, several former regional sales representatives of AMA commenced the Clancey action against AMA in the United States District Court for the Southern District of New York, asserting, inter alla, claims of age discrimination under the Age Discrimination in Employment Act (29 USC § 623 [a] [1]; § 626 [b] [ADEA]), regarding adverse changes in the terms and conditions of their employment, as *974 well as termination of some of the claimants; claims under the Employee Retirement Income Security Act (29 USC § 1001 et seq.) (ERISA) for lost benefits; and a variety of State claims.
Specifically, the complaint in the Clancey action alleged, inter alla, that beginning in 1987, AMA engaged in a "systematic effort” to eliminate the plaintiffs’ jobs by engaging in "willful discrimination on the basis of age”, including, among other things, by creating oppressive work conditions, reducing the size of their sales territories, hiring younger sales people and diverting sales leads to the younger sales people; and that, as a result of AMA’s actions, said employees "have lost salary and benefits, including but not limited to, health care, pension benefits, profit sharing and regular increases in compensation,” and "have suffered emotional distress as a result of AMA’s harassment, the termination of their employment, and their inability to find comparable work.”
AMA denied the allegations and asserts that it did not discriminate against any of its employees on the basis of age. Among other defenses to the Clancey action, AMA contended that some of the employees were replaced by older employees and that the plaintiffs were independent contractors and not protected by the ADEA. AMA also argued that even if its actions had a discriminatory result they were not intended to discriminate.
On November 30, 1990, AMA notified Atlantic Mutual of the Clancey action. By letter, dated March 5,1991, Atlantic Mutual disclaimed coverage under the aforementioned general liability and umbrella endorsements, asserting that the Clancey complaint alleges intentional acts, not covered under its policy, and that the public policy of New York bars an insurance company from insuring against age discrimination suits.
AMA retained its own counsel to defend the Clancey action, which was ultimately settled for $1.2 million in December 1992. In addition, AMA asserts that it incurred approximately $575,000 in defense costs in connection with the Clancey action.
By letters, dated April 27, 1993 and November 22, 1993, Atlantic Mutual reaffirmed its earlier disclaimer of coverage. By letters dated June 27, 1994 and October 25, 1994, AMA again sought to have Atlantic Mutual reimburse it for its defense and settlement expenses in connection with the Clancey action. In those letters AMA forwarded factual information seeking to show that it was not guilty of intentional age discrimination, but at worst might be liable for disparate *975 impact discrimination. By letter, dated November 17, 1994, Atlantic Mutual again reaffirmed its position disclaiming coverage. Thereafter, AMA commenced this action.
AMA argues that it did not engage in intentional discrimination, and that the facts in the Clancey complaint, at best, establish a claim for "disparate impact” age discrimination, and unintentional acts for which the policy provided coverage. It so advised Atlantic Mutual in the letters and contacts between them.
It is well settled that "[W]here an insurance policy includes the insurer’s promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer’s duty to furnish a defense is broader than its obligation to indemnify * * * [t]he duty to defend arises whenever the allegations in a complaint against the insured fall with the scope of risks undertaken by the insurer, regardless of how false or groundless these allegations might be” (see, Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 310 [1984] [citations omitted]).
Furthermore, "[t]he duty [to defend] is not contingent on the insurer’s ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy’s general coverage or within its exclusory provisions” (Seaboard Sur. Co. v Gillette Co., supra, at 310). Rather, the duty of the insurer to defend the insured rests on whether the complaint liberally construed alleges any facts or grounds which arguably fall within a risk covered by the policy. (Servidone Constr. Corp. v Security Ins. Co., 64 NY2d 419; International Paper Co. v Continental Cas. Co., 35 NY2d 322.) Therefore, "[s]o long as the claims” asserted against the insured "may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer’s responsibility to pay, there is no doubt that it is obligated to defend” (Schwamb v Fireman’s Ins. Co., 41 NY2d 947, 949). This is so even if the language of the complaint does not adequately state all the facts requisite to trigger coverage. "[A] policy protects against poorly or incompletely pleaded causes as well as those artfully drafted.” (Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, 670.) As long as there is potentially a claim within the policy’s coverage an insurer is obligated to defend even though the complaint contains ambiguous or incomplete allegations that do not clearly bring the case within coverage, if the insurer has knowledge of the facts which would bring the case within the policy’s coverage. (Fitzpatrick v American Honda Motor Co., 78 NY2d *976 61; American Home Assur. Co. v Port Auth., 66 AD2d 269.) Any doubt as to whether the allegations state a claim covered by the policy must be resolved in favor of the insured. (Muhlstock & Co. v American Home Assur. Co., 117 AD2d 117.)
An insurer will only be relieved of the duty to defend if it demonstrates that "the allegations of the complaint cast the pleading solely and entirely within the policy exclusions, and further, that the allegations, in toto, are subject to no other interpretation” (International Paper Co. v Continental Ins. Co., 35 NY2d 322, 325 [1974], supra; see also, Villa Charlotte Bronte v Commercial Union Ins. Co., 64 NY2d 846). Stated in another way, the insurer is obligated to defend an action brought against the insured whenever the complaint alleges a cause of action covered by the policy, regardless of the ultimate factual determination of the occurrence. (Supra.)
It is undisputed that Atlantic Mutual’s policy does not provide insurance coverage for intentional acts of discrimination. As noted, the general liability endorsement excludes from coverage occurrences resulting in personal injury or property damage that was "expected * * * or intended from the standpoint of the insured.” The umbrella endorsement expressly excludes coverage for occurrences which result in age discrimination that was "committed by or at the direction of the insured.”
However, AMA argues, in essence, that the allegations in the Clancey action include, "disparate impact” discrimination, which, it claims, is not excluded from coverage. In order to state a claim for discrimination under the disparate impact theory, the complaint must allege, at a minimum, that the employer utilized a facially neutral criterion which resulted in selecting applicants for hire or promotion in a significantly discriminatory pattern (see, Geller v Markham, 635 F2d 1027 [2d Cir 1980], cert denied 451 US 945 [1981]; Solo Cup Co. v Federal Ins. Co., 619 F2d 1178, 1186 [7th Cir 1980], cert denied 449 US 1033; Note, Disparate Impact Analysis and the Age Discrimination in Employment Act, 68 Minn L Rev 1038 [1984]). "Disparate impact” discrimination need not be intentional.
The law is unsettled as to whether disparate impact theory is applicable under the ADEA. The Supreme Court in Hazen Paper Co. v Biggins (507 US 604 [1993]) specifically declined to address the issue. The circuit courts have come to differing conclusions. The Second Circuit has applied disparate impact theory to ADEA. (See, Moresco v Evans, 964 F2d 106 [2d Cir *977 1992]; Lowe v Commack Union Free School Dist., 886 F2d 1364 [2d Cir 1989], cert denied 494 US 1026 [1990]; see also, Shutt v Sandoz Crop Protection Corp., 934 F2d 186 [9th Cir 1991]; Wooden v Board of Educ., 931 F2d 376 [6th Cir 1991].) A cause of action alleging intentional age discriminations implies within it an alternative cause of action based on disparate impact age discrimination (see, Solo Cup Co. v Federal Ins. Co., supra, at 1187). Other circuit courts have held that disparate impact theory should not apply to age discrimination claims. (See, Equal Empl. Opportunity Commn. v Parker School, 41 F3d 1073 [7th Cir 1994]; DiBiase v Smith Kline Beecham Corp., 48 F3d 719 [3d Cir 1995].) Commentators have also clashed over the issue. (See, Sloan, Disparate Impact in the Age Discrimination in Employment Act: Will the Supreme Court Permit It?, 1995 Wis L Rev 507 [1995]; Pontz, What a Difference ADEA Makes: Why Disparate Impact Theory Should not Apply to the Age Discrimination in Employment Act, NC L Rev 267 [1995].)
This court need not decide this issue of Federal law in order to make a determination in this action. It is clear that the Clancey claim alleged enough facts to make a prima facie claim for disparate impact discrimination. Therefore, there was a reasonable possibility that such claim would be recognized as valid, particularly since the Clancey action was pending within the Second Circuit. Additionally, the insurance policy provided for a defense against actions that are fraudulent, groundless or false. At most, Atlantic Mutual could argue that a disparate impact claim was groundless. Therefore, Atlantic Mutual had a duty to defend against the action which AMA claimed was groundless. Furthermore, Atlantic Mutual could have argued that, at most, the complaint alleged acts which amount to disparate impact treatment and that it is not protected by ADEA. In other words, the arguments being made here should have been made by Atlantic Mutual in the defense of the Clancey action. Accordingly, Atlantic Mutual had a duty to defend AMA in the Clancey action.
Atlantic Mutual argues that even if the allegation in the Clancey complaint are covered by the policy, it does not have a duty to defend or indemnify AMA as a matter of public policy. By opinion dated September 26, 1963, the State Superintendent of Insurance stated that acts of discrimination on the basis of race, creed, color or national origin "may not lawfully be written under the New York Insurance Law; is not authorized by Section 46 of the Insurance Law in any of its specific *978 provisions; and, since the writing of such coverage would be against the public policy of the State of New York as expressed in its Laws Against Discrimination, may not be written under 'catch-all’ provision of Section 46, subdivision 23.” It is well settled that the opinions of the State Superintendent of Insurance with respect to the Insurance Law are to be accorded great weight by the courts unless contrary to the clear wording of a particular statute (see, Matter of Liquidation of Consol. Mut. Ins. Co., 60 NY2d 1, 8 [1983]). The 1963 opinion did not include age discrimination and did not address unintentional or disparate impact discrimination. The language of the opinion also clearly indicates that it only addressed intentional discrimination.
Atlantic Mutual has submitted a copy of a letter dated December 3, 1990 from an attorney at the State of New York Insurance Department addressed to Atlantic Mutual. The letter states in relevant part: "The Department’s position regarding insurance against legal liability arising out of discrimination because of race, creed, color or national origin was first annunciated in September, 1963 by then Deputy Superintendent Alford, in an opinion after a public hearing. A copy of that opinion is enclosed. The Department has revisited this issue several times since then, most recently in 1989, and each time has reaffirmed the position that it is against public policy in this state to provide insurance coverage against legal liability arising out of acts of discrimination, even where the act was unintentional or vicariously imposed, which may be the case for an employer. While the Alford opinion only addresses, race, creed, color or national origin, it is our opinion that any act of prohibited discrimination under either federal or state law can not be insured.” (Emphasis added.) Atlantic Mutual has not provided the court with a copy of its inquiry to the Insurance Department. The court also notes that this letter was apparently not publicly disseminated and does not have the same authority as an official opinion of the Insurance Department.
In any event, a subsequent circular letter from the Insurance Department dated May 31,1994 to all "Licensed Property/ Casualty Insurers and Insurance Producer Organizations” (circular letter No. 6 [1994]) concludes that insurance coverage for acts of discrimination, when based solely on either disparate impact or vicarious liability is not against public policy. The letter states in relevant part:
"The Property and Casualty Insurance Bureau, in conjunction with the Office of General Counsel, has conducted a *979 comprehensive analysis concerning the permissibility of coverage for acts of discrimination under liability insurance policies. Based on this analysis, the Department has concluded that liability coverage for acts of discrimination, when based solely on either disparate impact (as Opposed to disparate treatment) or vicarious liability, would not be against public policy and therefore should be permitted * * *
"In recent years, however, actions and recoveries under the various and evolving civil rights laws have increasingly been rooted in discrimination claims based upon disparate impact, rather than disparate treatment. In such cases, the discriminatory result does not directly proceed from specific discriminatory acts against individuals; in fact, such acts are not an element of the wrong and need play no part in the facts alleged. Rather, such results are normally grounded upon statistical or other numerical profiles that reflect disparities between or among groups sufficient to support a finding of discrimination * * *
"Moreover, the Insurance Department concludes that the strong public policy against discrimination of any kind is, in fact, furthered by permitting coverage of the kinds described. By bringing to employers’ attention practices that can potentially result in unlawful discrimination, insurers’ loss prevention programs and underwriting standards should discourage such practices. Any employer who does not diligently attempt to modify employment procedures accordingly may well be denied insurance coverage. When unlawful acts of discrimination occur nonetheless, coverage will help ensure just compensation for victims.”
Accordingly, New York’s public policy does not bar coverage for disparate impact age discrimination.
The court further notes that even if coverage were against public policy or AMA was found to have practiced disparate treatment age discrimination, Atlantic Mutual would still have a duty to defend. (See, Colon v Aetna Life & Cas. Ins. Co., 66 NY2d 6; Andover Newton Theol. School v Continental Cas. Co., 930 F2d 89 [1st Cir 1991]; Continental Ins. Co. v Wilcox Elec., slip opn No. 84-2145-s [D Kan 1986].)
Where an insurer wrongfully refuses to provide a defense to its insured, the insurer must reimburse the insured for any reasonable sums paid in settlement. (Rosen & Sons v Security Mut. Ins. Co., 31 NY2d 343; Feuer v Menkes Feuer Inc., 8 AD2d 294.) The reasonableness of the settlement is generally an issue of fact that must be decided at trial. (Horn Constr. Co. v *980 MT Sec. Serv. Corp., 97 AD2d 786; Atlantic Cement Co. v Fidelity & Cas. Co., 91 AD2d 412 [Alexander, J.], affd 63 NY2d 798.)
Accordingly, plaintiff’s motion for summary judgment is granted to the extent that defendant Atlantic Mutual is declared to have been obligated to defend AMA in the Clancey action and must reimburse AMA for any reasonable sum paid in settlement. Defendant’s cross motion to dismiss is denied.