GEORGE A. HAMID & SON et al., Respondents, *v.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant.

First Department, July 6, 1961.

*Patrick J. Hughes* of counsel (*John P. Walsh* and *Richard J. Barnes* with him on the brief; *George J. Conway,* attorney), for appellant.

*A. J. Asche* of counsel (*Kurt J. Wolff* with him on the brief; *Nathan, Mannheimer, Asche, Winer & Friedman,* attorneys), for respondents.

STEUER, J.   George A. Hamid & Son is a partnership engaged in the business of theatrical agents.  As such, they represent performers, finding opportunities for them to appear, and receive a percentage of the performers' earnings.  They also supply attractions for producers and receive compensation from the producers for their efforts.  George A. Hamid is one of the partners.  In connection with their activities, Hamid had dealings with a circus owned by National Producing Company.  Sometime prior thereto a corporation known as George A. Hamid, Inc., also operated a circus.  This circus was terminated on an agreement with Col. Robert Morton, who was the sole stockholder of National Producing Company, and thereafter Morton's circus was known as the Hamid-Morton Circus.  George A. Hamid & Son, the partnership, supplied acts for this circus.

In 1952 the National Producing Company was giving a circus in Altoona, Pennsylvania.  Among the attractions in that circus was an aerial act known as Peaches O'Neill which had been supplied by George A. Hamid & Son.  One of the aerialists in that act, a Miss Anderson, was injured in the course of a performance and brought suit against the National Producing Company and George A. Hamid, individually.  It was the claim of the plaintiff in that action that the circus was operated by National Producing Company and George A. Hamid, as partners.  Hamid denied that that was the relationship, but the finding of the jury in that action was as the plaintiff there contended, and there was a resulting judgment of some $58,000.  The issue in that case was not whether the supplying of the acts by Hamid and the production of the circus by Morton constituted them partners or joint venturers.  The proof was directed to Hamid's participation in the circus as a proprietor jointly with Morton.  A large part of it was admissions in somewhat novel form of Hamid's connection with the operation of circuses generally, and this one particularly.

At the time in question George A. Hamid & Son had a contract of liability insurance with the defendant in this action. That policy also insured the individual partners. The question in this case is whether the policy covers the liability of Hamid individually resulting from the judgment in the afore-mentioned action.

It is quite clear that the policy was intended to cover the operations of George A. Hamid & Son in their business as theatrical agents. It is also clear that the liability imposed on George A. Hamid, and for which he is bringing suit, was a liability that had its base upon a finding that he, Hamid, was a partner with the National Producing Company in the production of the particular circus involved. Unless there are some special circumstances which would induce a different result, it must be clear that the coverage of the policy does not extend to outside activities of the individual partners (*Hartigan* v. *Casualty Co. of America*, 227 N. Y. 175). No one would assert that because the policy was extended to cover the partners individually, that that included any liability that might arise from the acts of the individual partners aside from their connection with the partnership. The circumstances claimed by the plaintiff in this action are in connection with the premium paid on the policy and its method of calculation. The policy in that connection reads as follows: " It is agreed that the premium for this policy is based upon the entire compensation of all persons employed in or in connection with the operations described in the declarations and shall include the commission retained by the insured for independent bookings and the amounts paid to performers of acts or package acts operating under the control of the insured." Undoubtedly, the commission received by George A. Hamid & Son for booking the O'Neill act, which was the act to which the injured aerialist belonged, was included in the calculation of the premium. But there is a big distinction between the activity of booking the act, which was a part of the usual business of George A. Hamid & Son, and the operation of the circus, in which that partnership had no part.

It so happens that the commissions of George A. Hamid & Son under its agreement with National Producing Company for supplying acts, of which the act in question was one, were based upon a percentage of the receipts of the circus. This fact would not make George A. Hamid & Son a partner with the National Producing Company in the operation of the circus, nor would it extend the coverage of the policy from accidents that might arise in the course of the booking to those that would arise in the course of the performance. In this connection it is impor-

tant to note somewhat more particularly the nature of the business of George A. Hamid & Son in the supplying of acts. In some instances, particularly in regard to fairs and exhibitions, they put on the show in addition to supplying the acts. In such instances whether as employees or independent contractors, the performers were working for the Hamid concern. As regards the circus, the performers contracted with the National Producing Company, and the record shows the contract between that company and the O'Neill troupe of which the injured performer was a member. Whatever the relationship may have been, employer-employee or independent contractor, the relationship was with National Producing Company and not with George A. Hamid & Son. It is possible that at the same time Miss O'Neill, as well as other acts, may have had some arrangement with Hamid by the terms of which Hamid was able to make her act available to National Producing Company. Also in the period between the time Hamid & Son made its arrangement with the performer and the time the performer contracted with the producer, Hamid provided transportation for the performer and carried out other activities which could possibly involve Hamid in situations involving tort liability. Exactly what those arrangements were does not appear in the record. When this situation is understood the somewhat difficult terms of the premium clause become more intelligible. And while compensation for supplying the act to the circus was included in the premium charged, this method of calculating the premium does not operate to extend the coverage to liability to performers not under the management of the partnership. Quite obviously the diverse ways in which the partnership did business led to a method of calculation which did not exactly reflect the coverage supplied. Even if there was a premium without coverage, there were situations also where there was coverage without a premium.

The difficulty with plaintiff's position is that he maintained at the trial of the negligence action, and at this trial, that he was not and never had been a partner of the National Producing Company, and that his activities were solely confined to performing his brokerage arrangement with them for the finding of suitable acts. While this is contrary to the finding of the jury in the negligence action, it is still a position which must defeat him in this action. Obviously if he was not a partner with Morton or his corporation, the partnership George A. Hamid & Son was not a partner in the Morton enterprise. The only avenue of approach to a finding that the Hamid partnership was a joint venturer with Morton is through Hamid's individual relationship with Morton. His contention bars that

avenue of approach. He cannot claim that in being a partner with Morton he was representing George A. Hamid & Son when he denies that he was a partner with Morton. It is also quite clear from plaintiff's attitude in connection with the negligence action that neither the partnership nor Hamid individually considered that the claim was one that was covered by their policy. No demand was made to have the insurance company defend the action, nor was any notice of its pendency given to them. While the absence of notice is not a ground of defense in this action, it is nevertheless an interesting fact which tends to confirm the view taken and to show that this action is a mere afterthought.

The judgment entered on the trial upon the direction of the court should be vacated, on the facts and on the law, and a verdict is directed in favor of the defendant, with costs.

EAGER, J. (dissenting). I would affirm. Under the terms of the policy issued to George A. Hamid & Son, a partnership, it covered bodily injury liability in connection with " all operations which are necessary or incidental " to " theatrical companies, travelling entertainers, musicians — all employees ". And, specifically, under the terms thereof, George A. Hamid, was covered for his acts as a " partner " of the insured firm " while acting within the scope of his duties as such ". Here, the testimony, without dispute, was that George A. Hamid's participation in the Hamid-Morton Circus was not on his own but was in furtherance of the business of the said firm George A. Hamid & Son. His interest in the circus, held in the injured's suit to be on a partnership or joint venture basis with Morton, was acquired and held for the benefit of and as a part of the business of said Hamid & Son firm. Whatever George A. Hamid did in connection with the circus was in furtherance of the affairs of the firm, and as a partner thereof and agent therefor. Therefore, if the policy means what it says, it did cover Hamid while acting as a " partner * * * within the scope of his duties as such " in connection with the Hamid-Morton Circus.

It is true that the policy recites that the business of the insured firm, George A. Hamid & Son, is that of " theatrical agent ". Such recital, however, is merely by way of representation and would not control over the provisions of the body of the policy. In any event, it clearly appears that the activities of George A. Hamid in connection with the circus were in fact in pursuance of the general theatrical booking business of George A. Hamid & Son.

Further, if in the reading of the policy as a whole, there is any ambiguity as to coverage, the same is to be resolved in favor of plaintiffs. " It is well-settled that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company ". (*Hartol Prods. Corp.* v. *Prudential Ins. Co.,* 290 N. Y. 44, 49.)

If there be any question as to whether or not the policy covered the operations of the insured firm and Hamid as partner therein in connection with the Hamid-Morton Circus, that question must be deemed to be resolved by the defendant company's acceptance of premiums upon a base which included such operations. " Although the amount of the premium cannot affect the plain terms of the contract, it is a fact to be taken into consideration in construing doubtful clauses in a policy." (1 Couch, Insurance [2d ed.], § 15:51, p. 742.) The testimony here was that it was the practice, in the matter of the computation of premiums on the policy in suit and on previous policies, to include in the premium base the receipts from the circus, considering them in the nature of commissions. The defendant did not dispute this testimony. Having received and retained premiums on the basis of the inclusion of the income from the operations of Hamid in the particular Hamid-Morton Circus, and not offering to return the portion of the same based on the circus income, the defendant company is estopped from claiming that the policy did not cover such operations.

Finally, it is to be noted that the plaintiffs, in their complaint, allege due performance of conditions precedent. The defendant, by its answer, admitted this allegation. Therefore, the defendant must be held to have admitted performance of conditions precedent to its liability for payment of expenses in defending against the injured's claim, including the item of printing bills and stenographic minutes. Consequently, as concluded by the learned trial court, such item was properly to be included in the judgment.

VALENTE and McNALLY, JJ., concur with STEUER, J.; EAGER, J., dissents and votes to affirm in opinion, in which RABIN, J. P., concurs.

Judgment vacated, on the law and on the facts, and a verdict directed in favor of the defendant, with costs to the appellant.