CITY OF UTICA, NEW YORK, Plaintiff,

v.

GENESEE MANAGEMENT, INC., Thomas C. Wilmot, Ronald A. Cocquyt, Martin L. Kramer, Solid Waste Equipment Environmental Team, Inc., a/k/a S.W.E.E.T., Inc. and Sweet, Inc., Richard F. Feagins, Individually and d/b/a Upstate Plating, Esther M. Feagins, Ronald J. Wargo, Lawrence P. George, Rocco J. DePaul and L & L Surplus of Utica, Inc., Defendants.

GENESEE MANAGEMENT, INC., Thomas C. Wilmot, Ronald A. Cocquyt and Martin Kramer, Third–Party Plaintiffs,

v.

The TRAVELERS INDEMNITY COMPANY OF AMERICA, The North River Insurance Company, and The Hartford Accident and Indemnity Company, Third–Party Defendants.

95–CV–605 (RSP/DNH).

United States District Court,
N.D. New York.

July 26, 1996.

Whiteman, Osterman & Hanna, Albany, NY (Philip H. Gitlin, Jean F. Gerbini, Ana–Maria Galeano), of counsel, for Defendants/Third–Party Plaintiffs Genesee Management, Inc., Wilmot, Cocquyt, and Kramer.

Morrison & Foerster, New York City (Debra Freeman, Kenneth M. Dreifach, of counsel), True, Walsh & Miller, Ithaca, NY (Rosanne Mayer, of counsel), for Third–Party Defendant The Travelers Indemnity Co. of America.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY (James A. O'Shea, of counsel), for Third–Party Defendant North River Insurance Co.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

The City of Utica ("Utica") brought a CERCLA/public nuisance action against Genesee Management, Inc. ("GMI"), Thomas Wilmot, Ronald A. Cocquyt, and Martin L. Kramer (collectively, "the GMI parties") and several other defendants seeking recovery for costs Utica has incurred and will incur to clean up an inactive hazardous waste site known as the Primoshield Site. The GMI parties have brought a third-party action seeking a declaration that three insurance

companies owe them a duty of defense and indemnification in Utica's first party-action. The GMI parties now move for summary judgment against two of those insurers—The Travelers Indemnity Company of America ("Travelers") and North River Insurance Company ("North River")—on the duty to defend. Travelers cross-moves for summary judgment dismissing the third-party complaint. I deny the GMI parties' motion and grant Travelers' motion.

## BACKGROUND

### I. Allegations of the First–Party Complaint

In the first party action, Utica, which now owns the Primoshield site, alleges that GMI and Cocquyt were owners and operators of the site when a significant portion of the contamination occurred. Compl. ¶¶ 18–21. At the time of the GMI parties' involvement, Primoshield, Inc. ("Primoshield") owned part of the site and leased the balance. Compl. ¶¶ 45, 48. Utica alleges that Cocquyt incorporated Primoshield in 1987 and that GMI and Cocquyt together owned 50 percent of Primoshield's stock. *Id.* ¶ 46. Utica also alleges that Wilmot and Kramer were operators of the site and that all of the GMI parties were involved in management of the site and controlled or had the authority to control the disposal of hazardous wastes. *Id.* ¶¶ 18–21.

Primoshield, Inc. operated an electroplating facility at the site. *Id.* ¶ 45. Utica's complaint alleges that in May 1984, Primoshield chemicals were spilled at the site. *Id.* ¶ 49. Further, on June 25, 1985, a Primoshield employee notified the New York State Department of Environmental Conservation ("DEC") that Primoshield had spilled a significant amount of material on the facility grounds and disposed of eight hundred to a thousand gallons of chemicals per week down drains leading to a storm sewer. *Id.* ¶ 73. After investigating the allegations, the DEC petitioned the United States Environmental Protection Agency ("EPA"), to perform an emergency clean-up and removal action on

March 12, 1986. *Id.* ¶¶ 74, 79. In a letter dated March 26, 1986, the EPA notified GMI that the EPA intended to commence an emergency response and considered GMI a potentially responsible party. *Id.* ¶ 84.

On December 27, 1989, Utica entered into a consent order with the DEC for clean up of the site. *Id.* ¶ 90. On March 28, 1990, the EPA sent GMI a request for information pursuant to 42 U.S.C. § 9604(e). *Id.* ¶ 92. By letter dated November 1, 1994, Utica's attorneys and the DEC advised the GMI parties that Utica and the DEC considered each of the defendants liable for the release and for the costs of the resulting clean-up. *Id.* ¶ 98.

### II. Insurance Coverage

Travelers issued GMI a special business policy including comprehensive general liability coverage with a $1 million aggregate and per occurrence limit effective from August 15, 1983 to August 15, 1986. Woodworth Aff. Ex. A ("Travelers' Policy"), Gen. 1–1 at 1, GL2–1. Travelers' policy covered GMI as well as its officers, directors and stockholders while acting within the scope of their duties. *Id.* at GL 5–1 at 2(II(c)). North River issued GMI an excess policy—in effect from August 15, 1983 to August 15, 1984—covering claims in excess of the coverage provided by other policies collectible by GMI or a self-insured retention of $10,000, whichever was greater. O'Shea Aff.Ex. A ("No. River Policy") at 1, 13(V).[1] North River's policy, which had a per occurrence/aggregate limit of $29 million, covered both GMI and its officers, employees, directors and stockholders while acting within the scope of their duties. *Id.* at 1, 12(III(c)). The GMI parties also claim coverage under a policy issued to Primoshield by the Hartford Accident and Indemnity Company on the theory that Utica has sued the GMI parties as officers, directors, or shareholders of Primoshield. First Am. Third–Party Compl. ¶¶ 51–54.

### III. GMI's Notice to Travelers and North River

Utica filed its first-party complaint on May

---

1. The North River policy does not contain page numbers. For convenience, I refer to the policy as if it were consecutively paginated with the declarations page as page one.

4, 1995. By letter dated May 18, 1995[2], the GMI parties demanded defense and indemnification from Travelers. First Am. Third–Party Compl. ¶ 28, Ex. C. The GMI parties claimed that time was of the essence because they were required to answer the complaint by June 30, 1995 and stated: "Any basis for disclaimer of coverage not raised explicitly with us on or before June 30 will be considered waived." *Id.* The GMI parties also enclosed the first-party complaint and a copy of the insurance policy, which Travelers alleges was incomplete. *Id.,* Fritz Aff. ¶ 2.

Travelers responded by letter dated June 14, 1995, and addressed to GMI's counsel.[3] Fritz Aff. ¶ 6, Ex. 3. Travelers questioned whether the policy GMI had enclosed was intended to provide coverage for spills resulting from an electroplating operation because that policy "provide[d] coverage for risks arising out of Genesee's business as 'Real Estate Management Corp'." *Id.* Ex. 3 at 1. Travelers invited the GMI parties to "explain why you believe that this contract should respond to this situation," and asked the GMI parties to supply any other policies that Travelers may have issued to GMI. *Id.* at 1–2. The insurance company noted that "[o]nce those contracts and any other information which you believe The Travelers should consider has been received and reviewed, The Travelers will be in a better position to determine whether it has any obligation to your clients or whether it requires additional information in order to do so." *Id.* at 2. Travelers closed its letter with the following language:

> Finally, all policies issued by The Travelers policies (sic) incorporate a conditions section. The complaint clearly indicates that certain conditions have not been met. Therefore, should it be shown that this or any other contract issued by The Travelers is potentially applicable to this situation, The Travelers specifically reserves its right to disclaim coverage on that basis. The Travelers also fully reserves all of its other rights in this matter, and neither this acknowledgment nor any future communication or investigation shall be deemed or construed as a waiver of any of the rights and defenses available to The Travelers, including those rights and defenses provided under its contract(s) of insurance.

*Id.*

The GMI parties made no response to the Travelers' letter prior to filing its third-party action.

The GMI parties also sent a demand letter to North River on May 18, 1995. First Am. Third–Party Compl. ¶ 42, Ex. F. The letter to North River demanded a response by June 30, 1995, and stated that any basis for disclaimer of coverage not raised explicitly on or before June 30 would be considered waived. *Id.* at 2. North River responded with a letter from a claims management service. Am. Third–Party Compl. Ex. G. This letter, which was dated June 30, 1995, rejected any present obligation to defend or indemnify absent the exhaustion of the underlying policies and reserved North River's right to deny or limit coverage to the GMI parties on several bases not specifically including failure to give notice. Id. at 2–6. However, the letter also stated:

> The delineation of specific policy provisions shall not be deemed as a waiver of any other right and defense No. River may have under the subject policy. No. River reserves fully and completely the right to rely upon any policy provisions and grounds to deny or limit coverage for this claim, including policy provisions or grounds not specifically referenced in this letter.

> No actions taken by No. River in the investigation of this claim shall be construed as a waiver of the rights available to them under the subject policy, including the right to deny coverage.

Id. at 6.

## IV. History of the Third–Party Action

The GMI Parties filed this third-party action against Travelers and North River on July 12, 1995. The Travelers answered on August 15, 1995, and asserted twenty-seven

---

**2.** Travelers alleges that it did not receive this letter until May 23, 1995. Fritz Aff. ¶ 2.

**3.** GMI's counsel alleges that she received Travelers' letter a week later. Gerbini Aff. ¶ 7.

affirmative defenses. On August 30, 1995, North River answered and asserted thirty-one affirmative defenses.[4] On November 13, 1995, the GMI parties filed a motion for partial summary judgment declaring that Travelers or, in the alternative, North River was obligated to defend the GMI parties and had breached that obligation.[5] The GMI parties also sought other relief—such as counsel of their own choice—ancillary to a declaration of the duty to defend. Both insurers opposed the GMI motion, and Travelers cross-moved for summary judgment dismissing the complaint as against Travelers. I heard oral argument on December 4, 1995, and reserved decision.

## DISCUSSION

The GMI parties contend that (1) the first party complaint contains allegations that fall within the scope of coverage of both the Travelers and North River policies and (2) the two insurance companies have waived all other defenses by disclaiming without explicitly raising the other defenses. Travelers responds that when GMI sought coverage, the company did not disclose that it operated an electroplating facility. Travelers also argues that it did not disclaim coverage but rather requested more information for the purpose of making a coverage decision. In support of its cross-motion for summary judgment, Travelers urges (1) its policy should be limited or rescinded entirely based on GMI's failure to disclose its operation of an electroplating facility and the attendant risks and (2) GMI's late notice of occurrence and claim were not waived and bar coverage. North River opposes summary judgment based on its claims that (1) North River has no obligation to defend and indemnify until the Travelers' policy and any other applicable policies are either exhausted or found inapplicable; (2) if the Travelers' policy does not apply, GMI has breached its warranty concerning the underlying coverage; (3) GMI's failure to give timely notice bars coverage; (4) a pollution exclusion clause in the North River policy bars coverage; and (5) North River has not waived any of its defenses. Although the arguments concerning both insurers have common themes, significant differences in their positions require me to consider each insurer separately after a brief discussion of applicable general principles.

## General Principles

### I. Summary Judgment

█ Summary judgment shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The interpretation of insurance policies implicated by a CERCLA action is governed by state law and in this case by the law of New York. *State of New York · v. Blank*, 27 F.3d 783, 788 (2d Cir.1994).

The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As to any issue on which the moving party does not have the burden of proof, the moving party may satisfy its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Once the moving party satisfies this initial burden, the burden shifts to the non-movant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d·Cir.1993). In satisfying this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed.R.Civ.P. 56(e).

---

4. The GMI parties filed an amended third-party complaint on October 31, 1995, adding Hartford as an additional defendant. Both North River and Travelers filed answers to the amended third-party complaint.

5. The GMI parties also appealed from Magistrate Judge David N. Hurd's scheduling order but at oral argument withdrew that motion without prejudice.

In weighing a motion for summary judgment, the court must accept as true the non-moving party's evidence and make "all justifiable inferences" in the non-moving party's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–2514. The evidentiary standard governing proof at trial determines how the court must assess the evidence in deciding whether the summary judgment standard has been met. *Id.* at 254–255, 106 S.Ct. at 2513–2514. In an ordinary civil case, such as this one, where plaintiffs must prove their case by a preponderance of the evidence, the determinative standard is "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

### Travelers

#### I. Coverage

The duty of an insurer to defend arises "whenever the four corners of the [first-party] complaint suggest . . . a reasonable possibility of coverage." *Continental Casualty Co. v. Rapid–Am. Corp.,* 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993). The insurer has the burden "of proving that the facts alleged within the complaint do not fit within the range of the policy's coverage." *County of Columbia v. Continental Ins. Co.,* 83 N.Y.2d 618, 627, 612 N.Y.S.2d 345, 634 N.E.2d 946 (1994).

The coverage issue presented by these motions is a narrow one. Travelers conceded at oral argument, for the sake of these motions only, that the allegations of the first-party complaint describe an occurrence that would receive coverage under the Travelers policy if the policy provided coverage for electroplating operations. Travelers vigorously contends, however, that the policy should not be construed to cover electroplating operations. In the alternative, Travelers argues that if the policy covers Primoshield's operations, it must be rescinded because GMI obtained such coverage only through a material misrepresentation of the risk its operations presented.

In arguing that the policy does not provide coverage for Primoshield's operations, Travelers first notes that the declarations page of the policy in effect between August 1983 and August 1986 describes GMI's business as real estate management. *See* Travelers' Policy Gen. 1–1 at 1. Travelers also points to the schedule of hazards set forth in the policy which lists names, locations, and premium calculations for many properties not including the Primoshield facility. *Id.* GL 3–2, 4–1. In addition, Travelers claims that it charged no premium for Primoshield and that if it had accepted the risk of covering Primoshield, it would have calculated its premium in an entirely different manner than it did for GMI's real estate management business. English Aff. ¶¶ 3–4. Travelers notes that the Schedule of Hazards states: "This Schedule discloses all hazards insured hereunder known to exist at the effective date of this policy unless otherwise stated herein." Travelers' Policy, GL 3–2 at 1; *see also* GL 1–1 at 1(c) (insured's adoption of hazards schedule). Travelers urges that these representations limit coverage to the hazards disclosed in the schedule.

Travelers also relies on extrinsic evidence of the GMI parties' understanding of coverage under the Travelers' policy. At a deposition, GMI's insurance broker testified that he obtained separate coverage for Primoshield and did not seek to obtain coverage for Primoshield from Travelers. Freeman Reply Aff.Ex. A at 16–17. Moreover, in response to an EPA informational request, GMI answered, "[w]e have no insurance policies which might indemnify against liability." *Id.* Ex. B ¶ 21(d).

The GMI parties respond that the policy does not limit the broad coverage its comprehensive general liability coverage affords by explicit reference to the declarations page or the schedule of hazards. The comprehensive general liability portion of the policy provides that Travelers will pay "all sums which the **Insured** shall become legally obligated to pay as damages because of . . . **bodily injury** or . . . **property damage** to which this insurance applies, caused by an **occurrence**. . . . Travelers Policy GL 5–1 at 1. Moreover, the declarations schedule recites: "The rating classifications stated herein, except as specifically provided elsewhere in this policy do not modify any of the other provisions of this

policy." *Id.* GL 3–2 at 1. The GMI parties also emphasize that although other coverages in the Travelers policy explicitly limit coverage to the buildings or property in the declaration, the comprehensive general liability portion of the policy contains no such limitation.

The policy provisions and arguments of the parties thus present three separate issues: (1) whether the description of the business on the declarations page can limit the scope of coverage provided by the comprehensive general liability portion of the Travelers' policy in the absence of specific language in the policy incorporating the business description; (2) whether the schedule or declaration of hazards can limit the general liability coverage in the absence of policy language so indicating; and (3) whether the court may consider extrinsic evidence to interpret the language of the policy and, if so, whether the extrinsic evidence offered supports Travelers' interpretation.

▇▇ The second question has the clearest answer. The declarations schedule or schedule of hazards flatly states that the rating classifications "do not modify any of the other provisions of this policy." *Id.* Moreover, New York's highest court has held the listing of hazards in a rating schedule cannot expand the scope of coverage offered by the policy. *Columbia,* 83 N.Y.2d at 629, 612 N.Y.S.2d 345, 634 N.E.2d 946. Travelers argues that *Columbia* does not control because the New York Court of Appeals held only that an unambiguous exclusion in a policy must be given effect even if the insured has listed the operation excluded on its declarations page and paid a premium for it. Travelers believes that a different result is required when the insured fails to list an operation, does not pay a premium for that operation, and then seeks coverage. I disagree. No language in the *Columbia* opinion suggests such an outcome. *Columbia* indicates that the scope of coverage in a policy will be defined by the policy and not the specific hazards listed in the declarations schedule.

Nor do the cases cited by Travelers require a different outcome. Most discuss policies which specifically limited the scope of coverage by reference to the schedule of hazards. *See Breed v. Ins. Co. of North America,* 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978) (policy referred to "described premises," face sheet contained description of premises); *Detrex Chem. Indus., Inc. v. Employers Ins. of Wausau,* 681 F.Supp. 438, 458 (N.D.Ohio 1987) (policy stated "[t]he insurance afforded by this policy is only with respect to such coverages as are indicated by specific premium charges or charges in the appropriate coverage"); *Chesapeake Physicians Professional Ass'n v. Home Ins. Co.,* 92 Md.App. 385, 608 A.2d 822, 826 (policy limited coverage for bodily injury and property damage to damage "arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto"), *cert. denied* 328 Md. 446, 614 A.2d 973 (1992); *Industrial Risk Insurers v. New Orleans Pub. Serv., Inc.,* 666 F.Supp. 874, 876, 880–81 (E.D.La. 1987) (hazards schedule referenced in policy; court construed meaning of hazards schedule including among other factors a consideration of the premium paid); *Tanjuatco v. Allstate Ins. Co.,* 1994 WL 721418 at *3 (N.D.Cal.1994) (policy booklet indicates insured receives only the coverage specified on the declarations page). In another case cited by Travelers, the court construed language in a form that specifically stated its intent was "to complete said policy." *Pfeiffer v. Grocers Mut. Ins. Co.,* 251 Pa.Super. 1, 379 A.2d 118, 123 (1977). The last case Travelers cites, *Direct Travel, Inc. v. Aetna Casualty and Surety Co.,* 214 A.D.2d 484, 625 N.Y.S.2d 221, 222 (1st Dept.1995), is ambiguous in its holding because although it construes the declaration page, it does not indicate whether the coverage language in the policy referred to or incorporated the declarations.

The GMI parties' position also enjoys support from a decision based on facts very close to those presented by this action. *See Trustees of Tufts University v. Commercial Union Ins. Co.,* 415 Mass. 844, 616 N.E.2d 68 (1993). In *Trustees,* Tufts University was sued under CERCLA for pollution allegedly caused by its wholly owned subsidiary. *Id.* at 70. Tufts demanded defense and indemnification from its insurers. *Id.* at 71. The insurers

refused and Tufts commenced a declaratory judgment action. *Id.* One of the insurers argued as Travelers does here that it had no duty to defend because the subsidiary's operations were not scheduled hazards. *Id.* at 75. Because the policy did not "unambiguously provide that coverage is limited to the specific hazards listed in the schedule," the court found that the hazards schedule did not limit the comprehensive general liability coverage provided by the policy. *Id.* at 76.[6]

Based on *Columbia,* I do not believe that New York courts would limit the scope of coverage in a comprehensive general liability policy to those risks described in the schedule of hazards absent specific language so limiting the coverage. *Columbia,* 83 N.Y.2d at 618, 612 N.Y.S.2d 345, 634 N.E.2d 946. There is no such language in the Travelers policy.

Next, Travelers urges that the description of GMI as a real estate management company on the declarations page limits the coverage of the policy to risks that arise from GMI's operations as a real estate management company and not as an electroplating company. GMI responds (1) that the scope of coverage is not limited by the description of its business on the declarations page and (2) that the complaint describes conduct within the scope of real estate management.

Travelers relies on *George A. Hamid & Son v. Indemnity Ins. Co. of North America,* 14 A.D.2d 107, 217 N.Y.S.2d 219 (1st Dept. 1961), *aff'd* 13 N.Y.2d 635, 240 N.Y.S.2d 612, 191 N.E.2d 96 (1963). The insurer in *Hamid* had issued a policy to George A. Hamid & Son, "a partnership engaged in the business of theatrical agents." *Id.* at 108, 217 N.Y.S.2d 219. The policy covered both the partnership and the individual partners. *Id.* at 109, 217 N.Y.S.2d 219. George Hamid, one of the partners, who operated a circus with a third party, was sued for injuries arising out of the circus operations. *Id.* at 108–109, 217 N.Y.S.2d 219. The court held that "[i]t is quite clear that the policy was intended to cover the operations of George A. Hamid & Son in their business as theatrical agents" and that "the coverage of the policy does not extend to outside activities of the individual partners." *Id.* at 109, 217 N.Y.S.2d 219. The court also found that George Hamid was estopped from claiming that he entered into partnership with the circus partner as a representative of George A. Hamid & Son by his testimony in the underlying action that he had never formed a partnership with the circus partner. *Id.* at 110–111, 217 N.Y.S.2d 219. Stripped to its essentials, the decision holds that because Hamid did not act as a representative of George A. Hamid & Son, he was not entitled to coverage under George A. Hamid & Son's policy. Because the court found that Hamid did not act as a representative of George A. Hamid & Son, Travelers misinterprets the holding when it urges that the court reached the result it did because the liability sued on did not arise from the activities of George A. Hamid & Son as theatrical agents.

In arguing that the scope of coverage is not limited by a business description on the declaration page, the GMI parties again rely on the holding in *Columbia.* *Columbia* involved not the description of a business in the declarations page but rather the description in the schedule of hazards. *Columbia,* 83 N.Y.2d at 629, 612 N.Y.S.2d 345, 634 N.E.2d 946. I need not determine whether a business description is sufficiently analogous to the schedule of hazards to support the GMI parties' argument because they correctly contend that the first-party complaint can be read to describe liability based on GMI's operation as a real estate management business. The complaint describes GMI as the owner and operator of the Primoshield facility, as a significant shareholder, and as an entity in a position to influence the disposal of hazardous waste. The complaint further indicates that GMI was active in financing arrangements for Primoshield and that Cocquyt[7] performed management and financial

---

6. The court noted, however, that an issue of fact was presented as to whether Tufts by failing to disclose its interest in the subsidiary increased the insurer's risk and therefore voided the insurer's obligation to defend. I consider this issue below at 16–17.

7. The policy, of course, would not cover liability alleged to flow from Cocquyt's stock ownership. *See Hamid,* 14 A.D.2d at 109, 217 N.Y.S.2d 219.

tasks. Many of these activities are exactly the sorts of activities that a real estate management company might normally perform. Because activities described in the complaint arguably fall within the scope of coverage of the policy—whether or not the business description is considered as part of the policy—Travelers has a duty to defend unless GMI's material misrepresentations void the policy or the duty is defeated by GMI's failure to give timely notice.

Because I do not find the policy to be ambiguous, I need not consider the extrinsic evidence offered by Travelers in its reply submission.[8]

Travelers also claims that any coverage GMI had would be voided by its non-disclosure of the Primoshield operation. Under New York law, a misrepresentation voids a policy only if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." N.Y.Insur.L. § 3105(b) (McKinney 1985). The phrase "such contract" in section 3105(b) means the contract that the parties agreed to including the premium charged. *Mutual Benefit Life Ins. Co. v. JMR Elec. Corp.*, 848 F.2d 30, 32–33 (2d. Cir.1988). Travelers claims that it would have charged a higher rate for coverage had it known GMI operated an electroplating facility. GMI urges that the only fact withheld from Travelers was its ownership of stock in Primoshield, that Travelers did not ask for information concerning stock ownership, and that stock ownership would not have been material to Travelers' decision to issue the policy.

In answering Utica's complaint, the GMI parties admitted ownership of stock in Primoshield but denied that they were owners or operators. *Compare* Compl. ¶ 46 *with* GMI Parties' Answer ¶ 46, *compare* Compl. ¶¶ 18–21 *with* GMI Parties' Answer ¶¶ 18–21. GMI also admitted that it assisted Primoshield in obtaining financing. *Compare* Compl. ¶ 52 *with* GMI Parties' Answer ¶ 52. Assuming that GMI could be guilty of misrepresen-

tation by withholding information not specifically requested by Travelers, *see Christiania General Ins. Corp. of New York v. Great American Ins. Corp.*, 979 F.2d 268, 280 (2d Cir.1992), it is still necessary to determine whether GMI withheld information and what information GMI withheld. If, as argued by Travelers, GMI withheld the fact that it operated an electroplating facility, the omission would probably be material because a reasonable insured would know that this fact would be considered by Travelers in making a coverage decision. *See Id.* However, if GMI withheld only information concerning stock ownership, it is not clear that a reasonable fact-finder would believe that information to be material. I cannot find that GMI parties owned or operated an electroplating facility based solely on the unverified allegations of the first-party complaint because the GMI parties—presumably relying on Primoshield's corporate separateness—denied this allegation. Therefore, there are issues of fact on misrepresentation.

## II. Late Notice Defense

GMI's policy with Travelers required GMI to give Travelers written notice of an occurrence "as soon as practicable" and written notice of "claim" or "suit" "immediately." Travelers' Policy GL 1–1 at 1.

In New York, compliance with notice of claim and occurrence provisions is a condition precedent not just to the duty to indemnify but also to the duty to defend. *Blank*, 27 F.3d at 793. The insurer need not show prejudice to void coverage based on late notice. *AXA Marine and Aviation Ins. v. Seajet Indus. Inc.*, 84 F.3d 622, 625–626 (2d Cir.1996) (notice of claim); *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co.*, 748 F.2d 118, 121 (2d Cir.1984) (notice of occurrence). Moreover, the insured bears the burden of showing the reasonability of a delay. *American Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 438 (2d Cir.1995) (citing *Security Mut. Ins. Co. v. Acker–Fitz-*

---

**8.** The submissions do not necessarily support Travelers' position in any case. The broker's testimony that he obtained coverage for Primoshield separate from the GMI coverage does not necessarily mean that GMI would not be covered

for its ownership interest in Primoshield when it is sued as an owner of the Primoshield facility. Similarly, Cocquyt indicated that he had no insurance that would indemnify GMI against liability before he saw the Utica complaint.

*simons Corp.,* 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972)). Although the question of whether notice has been given within a reasonable time is ordinarily for the jury, the court should decide the issue if the facts concerning the delay are not disputed and the insured has not offered a valid excuse. *Blank,* 27 F.3d at 795. Where, no valid excuse is offered, even a short delay will be unreasonable. *See American Home Assurance Co. v. Republic Ins. Co.,* 984 F.2d 76, 78 (2d Cir.) (collecting New York cases holding delays ranging from ten to fifty-three days to be unreasonable), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993).

The first party complaint alleges a spill in May 1984 and general poor disposal of hazardous substances during the entire period that GMI had stock in Primoshield. On March 26, 1986, EPA wrote to GMI and Cocquyt. The March 26th letter said, in pertinent part:

(EPA) has learned ... of a highly dangerous situation involving the documented release and threatened release of hazardous substances, pollutants and contaminants, including cyanides, at the site of Primoshield Inc., ... which constitutes a threat to public health and welfare and the environment. EPA has reason to believe that your company is legally connected with Primoshield and/or other companies which have previously operated at that location to the extent that your company may be considered a responsible party within the meaning of Section 107(a) ... of CERCLA....

Freeman Aff.Ex. G at 1. The letter also notified GMI that EPA intended to commence an emergency clean-up and that GMI might be held liable for the costs of that clean-up. *Id.* at 2.

After they received the March 26th letter, the GMI parties retained the firm currently representing them. Gitlin Aff. ¶ 3. GMI's counsel concluded that GMI was an investor in Primoshield, took action only to protect its investment, and did not participate in the day-to-day operations of Primoshield. *Id.* Therefore, GMI, on March 31, 1986, declined to participate in the clean-up. *Id.* ¶ 5, Ex. B.

GMI's counsel also states that he informed GMI and its principals that they were not subject to liability as owner-operators of Primoshield. *Id.* ¶ 4. Counsel also claims that on April 22, 1986, he had a conversation with DEC representatives who informed him that in the absence of new information, GMI would not be required to participate in the clean-up. *Id.* ¶ 6.

On March 28, 1990, the EPA sent GMI a request for information. GMI responded on April 17, 1990, giving detailed responses to twenty-four questions EPA had propounded. Freeman Reply Aff.Ex. B.

By letter dated November 1, 1994, counsel for DEC and counsel for Utica again notified GMI that it might be responsible for the clean-up costs incurred and to be incurred at the Primoshield site. Freeman Aff.Ex. I at 2. This letter requested that GMI notify Utica within thirty days whether GMI would voluntarily agree to pay all clean up costs at the site. *Id.* Utica further notified GMI that if GMI did not agree to pay all clean-up costs at the site, Utica would commence legal action against GMI. *Id.* at 3.

GMI first notified Travelers of Utica's claim on May 18, 1995. Gerbini Aff. ¶ 6; First Am. Third–Party Compl.Ex. C.

■ Travelers urges that GMI unreasonably delayed both notice of occurrence and notice of claim. I need not address notice of occurrence because GMI clearly failed to give timely notice of claim. "[A] claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy." *Fairchild,* 56 F.3d at 439. Although an insured may delay notice of occurrence based on "a good faith and reasonable belief that no liability covered by the policy will result," the insured must give notice of "an unreasonable—even sanctionable—assertion of liability." *Id.*

In *Fairchild,* the Second Circuit said "a powerful argument can ... be made" that a DEC letter notifying an insured it might be liable for the costs of clean-up was a notice of claim. *Id.* In this case, as in *Fairchild,* it is not necessary to determine whether the 1986 letter constituted notice of claim because the

November 1, 1994, letter from the DEC and Utica clearly notified GMI that Utica would sue unless GMI assumed the clean-up costs for the Primoshield site. Therefore, the reasonable period for notice to Travelers runs from no later than November 1, 1994.

The GMI parties do not seriously dispute that the November 1, 1994, letter from Utica constituted notice of claim. Rather, they seek to excuse their delay by claiming that their attorney advised GMI in 1986 (1) that it was not liable for CERCLA damages and (2) that EPA had abandoned any notion of pursuing the GMI parties. As noted previously, an insured cannot excuse delay in giving notice of claim based on a belief of non-liability no matter how well-founded that belief may be. *Id.* The GMI parties have thus not met their burden of offering a reasonable excuse for the delay between November 1, 1994, and May 18, 1995. Therefore, the issue of reasonability is a matter of law. New York courts routinely hold far shorter delays to be unreasonable. *See American Home Assurance,* 984 F.2d at 78 (collecting New York cases). In addition, the GMI parties' failure to give timely notice of claim appears even more clearly unreasonable when viewed in light of (1) prior indications that the DEC would make a claim and (2) GMI's participation in furnishing information to the DEC four years after the 1986 claim letter. Therefore, Travelers must be granted summary judgment unless Travelers waived its notice defense.

*A. Waiver*

The GMI parties maintain that Travellers waived its late notice defense by disclaiming coverage without disclaiming on the basis of late notice. The court should "find waiver where there is direct or circumstantial proof that the insurer intended to abandon the defense." *Albert J. Schiff Assoc., Inc. v. Flack,* 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980). The insurer manifests an intent to abandon a defenses of which it has actual or constructive knowledge when it disclaims liability based on other grounds. *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1431 (2d Cir.1991). The GMI parties argue that

Traveler's June 14, 1995, letter disclaimed coverage based solely on the description of GMI's business in the declarations page of the Traveler's policy. Travelers responds that the court cannot reasonably construe its June 14th letter as a disclaimer and that the GMI parties have not offered any other direct or circumstantial proof of Travelers' intent to abandon the waiver defense.

Travelers' June 14th letter does not directly disclaim coverage. In fact, the letter invites GMI to "explain why you believe that this contract should respond to this situation." Third–Party Am. Compl.Ex. D at 1–2. The letter also asks that GMI forward any other contracts that might supply coverage and any other information GMI believed Travelers should consider. *Id.* at 2. Travelers noted that "[o]nce those contracts and ... other information ... has been received and reviewed, The Travelers will be in a better position to determine whether it has any obligation to your clients...." *Id.* Hugh J. Fritz, Travelers' assistant director of special liability coverage, explains that on reviewing the complaint and policy submitted by the GMI parties, he believed that the GMI parties might have inadvertently tendered the wrong policy. Fritz Aff. ¶ 4.

The GMI parties argue that even though the Travelers' letter does not explicitly disclaim coverage, the letters functioned as a disclaimer because Travelers did not assume the GMI parties' defense despite the deadline those parties had imposed. The GMI parties cite no cases holding that an insured can impose a deadline for disclaimer, and I found none. Moreover, both the equities and the law compel rejection of the GMI parties' argument. To the extent the GMI parties faced a tight deadline, they had created the situation by their failure to notify Travelers when they received the November 1, 1994, letter from Utica threatening suit. And, at the time Travelers sent GMI the June 14th letter, the insurer could not have disclaimed conclusively based on late notice because "an insurer is not entitled to rely on the allegations of a complaint filed against an insured as proof that a condition of the policy has not been met." *See Commercial Union Ins. v. Int'l. Flavors & Fragrances, Inc.,* 822 F.2d

267, 274 (2d Cir.1987). Travelers acted reasonably in declining to issue a coverage decision immediately. *See Id.* Travelers also stated that all of its policies had a conditions section and that the first-party complaint "clearly indicates that certain conditions have not been met." First Am. Third–Party Compl.Ex. D at 2. Moreover, Travelers specifically reserved its right to disclaim on the basis of any unmet condition. Id. Because no competent evidence supports a finding that Travelers intended to waive its notice defense, I find as a matter of law that Travelers did not waive the defense.

I therefore grant Travelers summary judgment dismissing GMI's claims based on GMI's unreasonable delay in giving notice of claim.

### North River

The GMI parties urge that if Travelers is not obligated to provide them with a defense, North River, as the excess carrier, must do so. They point out that the declarations page of the North River policy does not describe GMI solely as a real estate management company and argue that North River waived all policy conditions and exclusions by failing to respond prior to the deadline set in the GMI parties' June 14th demand letter. The GMI parties also argue that North River's failure to specifically mention notice in its June 30th letter disclaiming any present obligation to defend or indemnify constitutes a waiver of the notice ground. In response, North River argues first that its obligation to defend or indemnify has not been triggered because the GMI parties have not established that underlying coverage—the Travelers and Hartford policies—either does not apply or has been exhausted. Second, North River argues that to the extent the Travelers' policy does not provide coverage, GMI has breached its warranty to keep that coverage in effect. Third, North River contends that its pollution exclusion excludes coverage in this case. Finally, North River urges that coverage has been voided by GMI's failure to provide timely notice.

### I. Coverage

North River's policy requires North River to provide a defense "[w]ith respect to any occurrence not covered, as warranted, by the underlying policies ... or not covered by any other underlying insurance ... but covered by ... this policy except for the amount of the retained limit...." No. River Policy at 11(II). The retained limit is $10,000. *Id.* at 1.

North River argues that it has no present obligation to defend because the GMI parties have not alleged that the Travelers' policy does not cover the occurrences alleged in the complaint or that it has expended the self-retained limit on its defense. Moreover, North River notes that GMI does not allege that it has no other insurance applicable to this occurrence. In fact, the GMI parties allege in their amended complaint that Hartford owes them a duty of defense and indemnification because they have been sued as Primoshield stockholders and employees. In the alternative, North River alleges that if the Travelers policy is found not to cover GMI for the occurrences alleged in the first-party complaint, I must find that GMI breached its warranty as to the scope of coverage. The GMI parties argue that (1) if I determine the Travelers' policy does not cover the occurrence Utica alleges, the first pleading problem is mooted and (2) the self-retained limit applies only to indemnification and not to defense.

 North River's defense clause requires that the insured exhaust or obtain a determination of the inapplicability of coverage both for policies listed in its Schedule and also for "any other underlying insurance collectible by the insured." *Id.* at 11(II). The policy also provides that "[t]his policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance." *Id.* at 12. Because the GMI parties have not secured a determination concerning coverage under the Hartford policy, a request for summary judgment on the obligation to defend is premature. Moreover, the GMI parties' failure to establish as a matter of law that they provided timely notice to North River would preclude a grant of summary judgment to the GMI parties in any event.

## II. Waiver

 Before addressing notice, however, I examine the GMI parties' claim that North River waived all bases for disclaimer other than exhaustion of underlying policies. By letter dated June 30, 1995, North River responded to GMI's May 18th demand letter. The GMI parties assert that North River's letter was postmarked on July 5, 1995, and argue that they can treat North River's delay in responding as a disclaimer. Gerbini Aff. ¶ 12. As discussed above with respect to Travelers, GMI was not entitled to set a deadline by which North River must raise its defenses or waive them. Indeed, there was less justification for imposing a deadline on North River than for imposing such a deadline on Travelers because North River was the excess carrier and its obligation to defend would be triggered only if underlying policies were exhausted or inapplicable.

 Nor can the GMI parties successfully argue that an unreasonable delay in raising the notice issue defeats North River's notice defense. *See Ogden Corp. v. The Travelers Indem. Co.*, 739 F.Supp. 796, 803–804 (S.D.N.Y.1989), (neither the doctrine of waiver nor the doctrine of equitable estoppel enables an insured to defeat a notice defense based on delayed disclaimer in a property damage case without a showing of prejudice), *aff'd* 924 F.2d 39 (2d Cir.1991). Failure to

disclaim as soon as reasonably possible prevents the insurer from asserting a non-compliance defense in two separate circumstances, neither of which is applicable here. First, when a complaint alleges bodily injury or death arising out of a motor vehicle accident, the insurer will lose its right to disclaim unless it asserts non-compliance as soon as reasonably possible. *See* N.Y.Insur.L. § 3420(d) (McKinney 1985); *General Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862, 864, 414 N.Y.S.2d 512, 387 N.E.2d 223 (1979).[9] Second, the insurer may be equitably estopped from asserting the non-compliance defense if the insured has been prejudiced by the insurer's failure to timely raise the defense. *See Schiff*, 51 N.Y.2d at 699, 435 N.Y.S.2d 972, 417 N.E.2d 84. GMI has not claimed prejudice or asserted the defense of equitable estoppel. Therefore, neither Section 3420(d) nor equitable estoppel required North River to raise its late notice defense earlier than it did.[10]

The GMI parties also argue that North River's letter waived all defenses it did not specifically raise.

North River's June 30th letter is long and prolix. It specifically reserves North River's right to disclaim coverage based on several provisions of the policy including a pollution exclusion but not including the notice of oc-

---

9. One New York case extends this doctrine to a hazardous waste case involving only property damage. *See Kutsher's Country Club Corp. v. Lincoln Ins. Co.*, 119 Misc.2d 889, 465 N.Y.S.2d 136 (Sup.Ct. Sullivan Cty.1983) (construing subdivision 8 of Insurance L. § 167, which is now Section 3420(d)). Because the court in *Kutsher's* gave no reason for the result it reached and the result ignores the clear words of Section 3420(d), *Kutsher's* has not been accepted as an accurate interpretation of New York law. *See Ogden Corp.*, 739 F.Supp. at 804.

10. One case from this district suggests that an insurer may waive a late notice defense in a property damage case by unreasonable delay in asserting that defense even absent prejudice to the insured. *See Agway, Inc. v. The Travelers Indemnity Co.*, 1993 WL 771008 at *10 (1993) (Cholakis, J.). The cases relied on by the court in *Agway*, however, involved either claims for bodily injury or death subject to Insurance L. § 3420(d) or instances in which the insurer had disclaimed without asserting the notice defense

or both. *See e.g. Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (death or bodily injury) (1979); *Allstate Ins. Co. v. Gross*, 27 N.Y.2d 263, 265, 269, 317 N.Y.S.2d 309, 265 N.E.2d 736 (1970) (bodily injury); *Appell v. Liberty Mut. Ins. Co.*, 17 N.Y.2d 519, 267 N.Y.S.2d 516, 214 N.E.2d 792 (1966) (disclaimer issued); *N.Y. Cent. Mut. Fire Ins. Co. v. Markowitz*, 147 A.D.2d 461, 462, 537 N.Y.S.2d 571 (2d Dept.1989) (bodily injury); *Metropolitan Prop. & Liability Ins. Co. v. State Farm Mut. Ins. Co.*, 119 A.D.2d 558, 500 N.Y.S.2d 369 (2d Dept.1986) (Section 3420(d) case); *Ehrlich v. Aetna Cas. & Sur. Co.*, 95 A.D.2d 936, 463 N.Y.S.2d 934 (3d Dept.1983) (bodily injury involved, disclaimer issued); *Western World Ins. Co. v. Jean & Benny's Restaurant, Inc.*, 69 A.D.2d 260, 262, 419 N.Y.S.2d 163 (2d Dept.1979) (serious personal injuries) *appeal dismissed*, 48 N.Y.2d 653, 421 N.Y.S.2d 202, 396 N.E.2d 485 (1979). Both analysis of the precedent on which *Agway* rests and the Second Circuit's affirmance in *Ogden*, 924 F.2d 39, render this portion of the *Agway* holding suspect.

currence or notice of claim conditions. The letter also includes the following paragraph:

> The delineation of specific policy provisions shall not be deemed as a waiver of any other right and defense No. River may have under the subject policy. No. River reserves fully and completely the right to rely on any policy provisions and grounds to deny or limit coverage for this claim, including policy provisions or grounds not specifically referenced in this letter.

Am. Third–Party Compl.Ex. G at 6. The June 30th letter also states: "No actions taken by No. River in the investigation of this claim shall be construed as a waiver of any of the rights available to them under the subject policy, including the right to deny coverage. *Id.*

■ North River's letter denies a current obligation to defend or indemnify but does not disclaim coverage under the policy *if* the underlying coverage is exhausted. The letter leaves the ultimate issue of coverage open. Therefore, the letter is not a disclaimer within the meaning of *AMRO Realty*, and *AMRO Realty* does not compel the conclusion that North River waived a late notice defense.[11] *AMRO Realty*, 936 F.2d at 1430–31.

### III. Notice

■ North River's policy requires the insured to give notice of an occurrence "reasonably likely to involve the company hereunder." No. River Policy at 14 (Conditions, D). Similarly, the insured must give "notice of any claim made on account of such occurrence." *Id.* North River's language thus limits the insured's notice obligation to occurrences likely to trigger North River's coverage and to claims and suits based on those occurrences. An insured's duty to notify its excess carrier of an occurrence is triggered

"when the circumstances ... would have suggested a reasonable possibility of a claim that would trigger that excess insurer's coverage." *Olin Corp. v. Ins. Co. of North America*, 743 F.Supp. 1044, 1054 (S.D.N.Y. 1990), *aff'd* 929 F.2d 62 (2d Cir.1991).

■ The March 26, 1986, letter to GMI from the EPA indicates that the EPA estimated Phase I response costs at $125,000 and Phase II response costs at $802,000 and was currently unable to estimate the response costs for Phase III. The GMI parties have argued that they were excused from notice based on the March 26, 1986, EPA letter because they had a reasonable belief that the claim had been abandoned. However, a reasonable belief in non-liability does not excuse late notice of claim. *See Fairchild*, 56 F.3d at 439. GMI's receipt of Utica's demand letter—which was a claim— must be viewed in the context of its knowledge of the EPA's 1986 partial estimate of clean-up costs. *See* Freeman Aff.Ex. G at 2. Certainly a reasonable fact finder could find that once GMI had both the November 1, 1994, demand letter and the 1986 EPA letter in its possession, it had a basis for knowing North River's coverage might be triggered. Therefore, I must also deny the GMI parties' request for summary judgment on their claim for defense against North River on notice grounds. I do not address the opposite side of the coin—whether a reasonable fact finder would be required to find that GMI should have notified North River when GMI received Utica's demand—because North River has not moved for summary judgment.

### CONCLUSION

The GMI parties' motions for summary judgment against Travelers and North River

---

11. Because North River specifically mentioned the pollution exclusion, it did not waive that exclusion either. However, North River's pollution exclusion excepts sudden and accidental pollution. See No. River Policy at 13 (Exclusions (e). In order to avoid the obligation to defend under a policy exclusion, the insurer has the burden of demonstrating both that all of the allegations of the complaint fall entirely within the exclusion and also that no exception applies. *Blank*, 27 F.3d at 789–790; *contra Borg–Warner*

*Corp. v. Ins. Co. of North America*, 174 A.D.2d 24, 31, 577 N.Y.S.2d 953 (3d Dept.), *lv. appeal denied* 80 N.Y.2d 753, 587 N.Y.S.2d 905, 600 N.E.2d 632 (1992) (holding insured has the burden of showing exception to exclusion). Utica's complaint contains at least one allegation—the May 1984 spill—that could be construed as sudden and accidental. *See* Compl. ¶ 49. Therefore, North River's pollution exclusion would not relieve North River of the duty to defend if it otherwise exists.

are denied. Travelers is granted summary judgment dismissing the GMI parties' complaint as against Travelers.

IT IS SO ORDERED.